John L. Redmond et al., Respondents, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Appellant.

In order to maintain an action to recover back money paid in satisfaction of an illegal assessment, it must appear that the payment was made in ignorance of the invalidity of the assessment or through some legal coercion or coercion of fact.

Where an assessment is invalid on its face, or where the property owner has knowledge, actual or constructive, of its invalidity, if he pays it without duress, the payment is voluntary and it cannot be recovered back.

Where in an action to recover back moneys paid in satisfaction of an assessment upon property in the city of New York, alleged to be illegal because of facts *de hors* the record, it appeared that the payment was made seventeen years after the assessment was confirmed, in order to procure a loan upon mortgage of the premises, as a condition of which it was required that the assessment should be canceled of record; no attempt had been made by the municipal authorities to collect or enforce it. Two days after the payment, the plaintiffs filed a claim against the city and this action was brought. *Held,* that the presumption was, plaintiffs had knowledge of the invalidity of the assessment at the time of payment; that this presumption was not overthrown by testimony of one of the plaintiffs, who were co-tenants, to the effect that she paid the assessment, thinking it to be legal, as this did not show ignorance on the part of the other plaintiffs, and knowledge of any one of them was chargeable to all; and that, therefore, the action was not maintainable.

(Argued February 4, 1891; decided February 24, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 3, 1890, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. J. Dean* for appellant. The plaintiffs have not shown that the assessment confirmed in 1871 was illegal. (*Goszler* v.

*Georgetown*, 6 Wheat. 593; *In re Hebrew Asylum*, 70 N. Y. 476; *In re Bassford*, 50 id. 512; *In re Williamson*, 3 Hun, 65–68; *In re Gantz*, 85 N. Y. 536, *Bigelow* v. *Boston*, 120 Mass. 826; *In re Folsom*, 56 N. Y. 60.) The payment was voluntary, and the money cannot be recovered. (*Phelps* v. *Mayor, etc.*, 112 N. Y. 216; *Tappan* v. *Young*, 9 Daly, 357; *Chase* v. *Chase*, 95 N. Y. 373; *Van Nest* v. *Mayor, etc.*, 113 id. 652; *Vaughan* v. *Vil. of Portchester*, 115 id. 637; *Little* v. *Bowers*, 134 U. S. 547; *Lamborn* v. *County Comrs.*, 97 id. 181; *R. R. Co.* v. *Comrs.*, 98 id. 54; *Wabaunsee County* v. *Walker*, 8 Kans. 431.)

*James A. Deering* for respondents. The plaintiffs are entitled to recover the assessment, for the reason that it was in fact null and void because the ordinance and resolution providing therefor were wholly void, and that the facts establishing this want of jurisdiction, namely, the invalidity of the ordinance providing for the work and the assessment, did not appear upon the face of the assessment-list. (*Tripler* v. *Mayor, etc.*, 53 Hun, 36; *Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Bruecher* v. *Vil. of Portchester*, 101 id. 240, 244; *Strusburgh* v. *Mayor, etc.*, 87 id. 453; *Horn* v. *Town of New Lots*, 83 id. 100; *Peyser* v. *Mayor, etc.*, 70 id. 497; *N. Bank of Chemung* v. *Elmira*, 53 id. 49; *Newman* v. *Suprs.*, 45 id. 676; *Bank of Commonwealth* v. *Mayor, etc.*, 43 id. 187.) The assessment in question was void, for the reason that the resolution and ordinance of the common council providing for paving Thirty-sixth street and for the assessment of the expense thereof had not been published as required by the 7th and 37th sections of the then charter of the city. (Laws of 1857, chap. 446, §§ 7, 27; Laws of 1868, chap. 853; *In re Douglas*, 46 N. Y. 42; *In re Smith*, 52 id. 526; *In re Burmeister*, 76 id. 174.) The assessment is valid upon the face of the list, and the facts establishing its invalidity were proven by extrinsic evidence. (*In re Deering*, 93 N. Y. 361.) The payment of the assessment was involuntary. The circumstances under which the payment was made constituted duress in fact. (*Vaughan* v.

*Vil. of Portchester,* 6 N. Y. S. R. 681 ; *Tripler* v. *Mayor, etc.,* 53 Hun, 36.)

GRAY, J.   This action was brought to have declared void and vacated an assessment for repaving a part of Thirty-sixth street, in the city of New York, and to recover back the moneys paid in satisfaction thereof.   The work was ordered done by an ordinance passed in 1869.   The assessment was confirmed in 1871, and its payment was made in 1888.   The illegality set up by the plaintiff consisted in the alleged omission to advertise the resolution and ordinance of the common council, as required by the law in such cases.

For the better understanding of the conclusion we have arrived at, that this plaintiff was not entitled to any recovery in the action, because of the circumstances disclosed by the case, a statement of some of the material facts, as contained in the findings of the trial court, becomes important.   At the time of the confirmation of the assessment for the repavement of the street in 1871, the owner of the premises in question was James Redmond.   He died in 1877, intestate, seized of the premises (which were built upon), and leaving a number of children him surviving.   In 1888, eleven years later, his heirs determined to have a partition of their inheritance and agreed to effect it between themselves, without the aid and expense of an action at law.   Under their agreement, the parcels of land were to be drawn for by lot.   The liability of each heir for rents and personalty received, meanwhile, was agreed upon, and also the valuation of each piece of real estate.   The Thirty-sixth street parcel in question fell to Mrs. Howlett, a sister.   By the agreement, she assumed a mortgage already upon it of $7,000, and became bound to repay the sum of upwards of $13,000 for purposes of equalization.

In order to make that payment, she applied for and obtained a loan of $21,000 from the United States Trust Company. But the lender made it a condition of the loan that this assessment should be canceled of record.   Thereupon, it was paid in behalf of all the heirs, who were obliged by their agree-

ments to convey each parcel free of incumbrance.  Two days after making the payment, however, they presented a claim against the city for the moneys so paid, and, payment being refused, this action was commenced.

· During all of these seventeen years which elapsed between the confirmation of the assessment and its payment, under the circumstances mentioned, there does not appear to have been any action taken by the municipal authorities in the direction of collection or enforcement.  All that was done, as it appears in this record, was the advertisement of the completion of the assessment-list by the board of assessors; a transmission of the list to the board of revision, etc., for confirmation; the subsequent confirmation by that body, and the entry in the books of the clerk of the bureau of arrears in November, 1871.

Thereby it undoubtedly appeared as a lien upon the premises affected, but there does not appear to have been any demand of payment, or any process or warrant issued for its collection.  Nor do the proofs disclose any excuse for the delay by the plaintiffs in paying the assessment, or in investigating the character of the apparent charge upon their property.  Is it conceivable, under the circumstances related, that a cause of action could have accrued in the plaintiffs' favor against the municipality?  I am not aware of any case which can be deemed to go so far as to warrant such an action, in the face of the facts and of the presumptions they support.  The theory of such an action is that, *ex æquo et bono,* the defendant, having no right to require the payment of the assessment, therefore, should not retain the moneys paid by the plaintiffs, and should restore them upon their demand.

To maintain the action, it is essential that it should appear that the payment had been made in ignorance of the invalidity of the assessment and through some legal coercion, or involuntarily upon some coercion in fact to prevent the seizure of goods or the arrest of the person. · (Dillon's Municipal Corps. § 940; *Peyser* v. *Mayor, etc.,* 70 N. Y. 497; *Phelps* v. *Mayor, etc.,* 112 id. 222.)  In *Peyser* v. *Mayor, etc.,* Judge FOLGER'S opinion contains a discussion of the principle upon which

actions may be maintained to recover back moneys paid in cases of assessments illegally imposed. It was there said that where assessment proceedings "are regular on their face and on presentation make out a right to have and demand the amount levied, and to collect it in due course of law, etc., * * * unless void on their face, they have the force of a judgment; the party is legally bound to pay and has no lawful mode of resisting. The only remedy is a reversal of the adjudication. Until reversed, they give the collector of the tax the right to take and sell goods and the assessment remains *prima facie* a valid lien upon real estate." · In that case the assessment was imposed in March, 1869, and in October of the same year, it was, on motion, set aside and adjudged to be void. It also appeared that, in July, the plaintiff received official notice of the confirmation of the assessment and a demand of payment on or before July twenty-seventh, and that, thereupon, he paid under protest. The difference is very material between that case and this; both in the absence here of the element of a demand by the authorities and in the extraordinary inaction on both sides for seventeen years.

The long-established and well-recognized general rule on the subject of voluntary payments is that, when made with knowledge of the facts and not induced by the fraud of the other party, they are beyond recall in law. (*Brisbane* v. *Dacres*, 5 Taunton, 143; *Silliman* v. *Wing*, 7 Hill, 159; *Preston* v. *Boston*, 12 Pick. at p. 14.)

So, where an assessment is paid which, upon its face, carries the notice of its illegality and consequent invalidity, and no duress is resorted to for its collection by the authorities, its payment by the property owner would be voluntary in the eye of the law and its restoration denied. (*Fleetwood* v. *City of New York*, 2 Sandf. 475; *Peyser* v. *Mayor*, 70 N. Y. 496; *Phelps* v. *Mayor*, 112 id. 216.) But the principle upon which such payments are deemed voluntary, extends to cases where, without the impress of illegality upon their face, assessments are paid with knowledge, actual or constructive, of the facts which make them invalid claims of the municipality. That

should be quite obvious; for the principle underlying the right to compel a restoration of the moneys paid is that the debtor was ignorant of the existence of the facts which would have precluded his creditor from maintaining his demand at law, or enforcing his lien against his defense. The court should deny a claim for the repayment of moneys in such cases, unless it appears in proof that the parties charged with their payment were ignorant of the facts constituting the illegality of the assessments, and paid them, when demanded, and under circumstances exhibiting such good faith in the matter as to make it appear that they acted under a moral coercion, or else it should be evident that the payment was involuntary and compelled by some duress.

In the present case, conceding the illegality of the assessment proceedings, I think ample reasons exist for denying the relief which the plaintiffs seek. For eleven years after becoming possessed of the property they made no attempt to discharge the lien by payment or suit, and no attempt was made by the city to collect payment. When, for their mutual convenience, and in order to raise moneys to equalize their respective shares in the division of their father's estate, a loan is made, they then find themselves obliged to move in discharge of the lien of the assessment; not because of any demand or action by the municipal authorities, but because the lender has required a clear record of title. When the payment is then made within two days, practically immediately, the plaintiffs file their claim and institute this action, on the ground that the assessment proceedings were invalidated by reason of the failure to observe a legal requirement. It is true that the trial judge found that at the time of payment the plaintiffs believed the assessment legal, and were ignorant of the facts constituting its invalidity; but the finding was excepted to, and I do not think there is evidence sufficient to sustain it. The finding could only have been based on the testimony of one of the plaintiffs, who testified to having paid the assessment, and that she did so thinking it was legal. It is difficult to see how the evidence of this witness could con-

clusively establish ignorance of the facts as to the invalidity of the assessment on the part of the other plaintiffs, co-tenants with her of undivided interests in the property. She did not manage the estate; it was her sister who had acquired the property, and the mother of the plaintiffs had been the administratrix of the estate. The witness may well have been herself ignorant of the facts upon which the claim was based, which was immediately made on behalf of the plaintiffs, and still the others, or some of them, may have been possessed of the requisite information. And the knowledge by any of them in such a matter, under the circumstances, should be chargeable to all. So I consider that the evidence, when considered, not by its weight, but in its nature, to be wholly insufficient to support so broad and material a finding. The presumption is decidedly against the fact that these plaintiffs believed the assessment valid and incontestable; whether we view their action in claiming back the moneys immediately after their payment, or whether we view their conduct in neglecting to pay during all the years of their possession and until it became desirable to borrow some money on the property. The irresistible inference from the facts was that the invalidity of the assessment lien was recognized, from the failure of the city to take any step to demand or to enforce collection of it in the usual statutory methods, and that the plaintiffs knew its infirmity, and, in paying its amount, to permit the loan to be then perfected, relied upon their ability to recover it back by a suit. The payment was not under coercion in fact; inasmuch as there was no compulsion, as by warrant or threatened seizure. (*Phelps* v. *Mayor*, 112 N. Y. 216.) There was no coercion in law, because that would exist only when, the assessment having been confirmed, payment thereof had been demanded by the authorities and seemed to be legally and rightfully due them. (*Peyser* v. *Mayor*, *supra*.)

Such an action, though at law, is, nevertheless, equitable in its nature and relief is granted, in adjudging a repayment of moneys paid under illegal assessments, on the ground that to

permit their retention would be against equity and good conscience. (Dillon's Municipal Corps. § 939.) When the payment has been made under some actual compulsion, in fact, or in law, as where it is made upon demand, in ignorance of the facts and because to all appearances the assessment is on its face regular and valid, the party is entitled to relief. But if the proof is insufficient to furnish ground for a finding of ignorance, and the circumstances disclosed by the case repel the inference of any coercion, in law or in fact, the relief should be denied.

The question, which is presented to the court, in such an action, is whether on the facts the city ought to keep the moneys, and though the action may be in form *ex contractu*, it is not based upon any contract obligation, but rather upon the moral aspect of the matter. Though in assumpsit, the action depends upon general principles of equity for the maintenance of the plaintiffs' claim to the moneys. (*Kingston Bank* v. *Eltinge*, 66 N. Y. 625 ; *Chapman* v. *Forbes*, 123 N. Y. 532.) It is not a matter of strict legal right in the plaintiffs and the answer to the question turns upon the facts and the inference they justify and support. The rules, which would govern, if the action were between individuals, should not be stretched because the defendant is a municipal corporation. It is equally entitled to the equitable considerations, which would prevail in favor of the natural person. It should not be lost sight of that in this species of actions the real merits are not always with the parties who bring them, and in this particular case they probably are with the city. The basis of the claim is usually the failure to create a charge upon the property owner assessed, from the disregard, or omission, of some more or less essential legal requirement; as, for instance, in this case, the omission to advertise in newspapers, validly designated, the resolution and ordinance of the common council, providing for the doing of the work. The work may have been properly done; but the party charged for its benefits endeavors to escape his assessment through some technical mistake committed by the authorities and to spread his burden upon the city at large.

The cases in the reports, where the facts are recited upon which the opinion is predicated, show either coercion in fact or in law by the authorities. In the case of *Peyser* v. *Mayor, etc.* (*supra*), relied upon by the respondent, it appeared that the plaintiff received official notice and a demand of payment on or before a certain date named, and it was complied with. Judge FOLGER, in his opinion in that case, in reference to *N. Y. & H. R. R. Co.* v. *Marsh* (12 N. Y. 308), uses this significant language: " There is no clashing here with the case * * *. Besides, in that case, the collector did not assert a right to seize property then and there. There was no taking, nor imminent danger thereof."

The conclusion to which we are brought, by the consideration of this case, is that the great lapse of time during which the assessment remained without demand, or steps taken to collect it ; the want of diligence in the parties to pay it, or to move in its vacation ; the fact that when payment is finally made, it is made without any coercion and only for purposes of convenience and accommodation, and immediately thereupon a claim is filed and as soon as possible placed in suit for the restoration of the moneys on the ground of the illegality of the proceedings leading to assessment ; that all these are circumstances which should have precluded the court from granting the relief demanded. Added to these equitable considerations is the utter failure of the proofs to establish ignorance of the fact of invalidity on the part of the plaintiffs, or to furnish that explanation of their conduct which every such case should contain as the basis for granting relief.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.