THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE EDISON ELECTRIC ILLUMINATING COMPANY of New York *v.* EDWARD WEMPLE, Comptroller of the State of New York.

*Corporation Tax Act — voluntary payment under a mistake of law — there can be no resettlement by the Comptroller.*

Section 19 of chapter 542 of the Laws of 1880 (the Corporation Tax Act), added by chapter 463 of the Laws of 1889, does not authorize or require the Comptroller of the State of New York to resettle and revise a tax assessed by the Comptroller upon the report of a corporation voluntarily made and filed by it in the Comptroller's office, the tax upon which has been voluntarily and without objection paid into the State treasury by the corporation, with a full knowledge of the facts, but under a mistake of law (as subsequently disclosed by the courts) as to its liability to pay the tax.

CERTIORARI to review a determination of the Comptroller of the State of New York in relation to the assessments for the three years ending November 1, 1888, of taxes against the relator. The writ was issued pursuant to an order made at the New York Special Term, January 7, 1891.

*W. Laird Goldsborough,* for the relator.

*S. W. Rosendale, Attorney-General,* and *John W. Hogan,* for the respondent.

MAYHAM, P. J. :

This matter comes before this court upon the return to a writ of certiorari granted to review the determination of the Comptroller denying the application made by the relator for the revision and resettlement of a tax.

The relator is a domestic corporation organized under chapter 37 of the Laws of 1848, entitled " An act to authorize the formation of gas light companies," and the various acts of the Legislature amendatory thereof.

The taxes sought to be reviewed were imposed by the Comptroller for the years 1886, 1887 and 1888.

The tax assessed for 1886 was paid by the relator into the State treasury in 1887, and that for 1887 was in like manner paid in 1888, and that for 1888 was paid in 1889.

These taxes were all based upon the report which the relator made to the Comptroller each year, and were paid without objection by the relator.

On the 8th of July, 1890, the relator made an application to the Comptroller for a resettlement and revision of these taxes, and accompanied the same by affidavits in support of such application; affidavits were also filed in opposition to such revision on the part of the State, and on the 26th of November, 1890, the Comptroller made an order denying such revision and readjustment, and for such denial and refusal the relator, on the 7th day of January, 1891, sued out this writ.

The question whether a tax such as was levied and paid in this case is a legal and valid tax lawfully levied and assessed by the Comptroller, is no longer an open one, as the Court of Appeals in the case of *The People ex rel. The Edison Electric Illuminating Co.* v. *Wemple* (129 N. Y. 664), expressly held that such company was a manufacturing company, and as such exempt from this tax under section 3 of chapter 542 of the Laws of 1880.

The opinion in this case was announced January 20, 1892, reversing the decision of the General Term of the Supreme Court,

announced in July, 1891, wherein it was held that the relator was not entitled to exemption from tax as a manufacturing corporation, so that at the time of the Comptroller's refusal to readjust this tax the decisions of this court had declared the relator subject to the tax, and the Comptroller would seem at that time to have been bound by that decision, and it is insisted by the defendant that a succeeding Comptroller would not be authorized to revise or review the determination of the former Comptroller upon application for revision. (*People ex rel. American Surety Co.* v. *Campbell*, 64 Hun, 417.)

But the main contention on the part of the defendant is that the payment of this tax into the State treasury was a voluntary payment by the relator of a tax assessed by the Comptroller upon a report voluntarily made to him by the relator, and that the relator is, therefore, estopped by its own voluntary acts from asking a readjustment and revision of this tax by the Comptroller.

In answer to this contention it is urged by the relator that section 19, added to chapter 542 of the Laws of 1880 by chapter 463 of Laws of 1889, provides that " the Comptroller may at any time revise and readjust any account theretofore settled against any * * * corporation * * * by himself or any preceding Comptroller for taxes arising under this act, or the act to which it is an amendment, whenever it shall be made to appear by evidence submitted to him, that the same has been illegally paid or so made as to include taxes which could not have been lawfully demanded."

Does this section and the adjudications under it authorize and require the Comptroller to resettle and revise a tax assessed by the Comptroller upon the report of a corporation voluntarily made and filed by it in the Comptroller's office, and the tax upon which has been voluntarily and without objection paid into the State treasury ?

This question has not been answered by any adjudication to which our attention has been called. The principal point discussed and decided in the case of *People ex rel. American Contracting & Dredging Company* v. *Wemple* (60 Hun, 225), was as to whether the limitation as to the time of applying for revision imposed by section 17 of chapter 501 of Laws of 1885, was modified by section 19 and section 20 of chapter 463 of the Laws of 1889, and the court held that it was so modified and enlarged.

370 PEOPLE ex rel. EDISON ELECTRIC CO. v. WEMPLE.

THIRD DEPARTMENT, MAY TERM, 1893.

But the precise question raised in this case was not involved in that determination, nor was it raised or determined in *People ex rel. Edison Electric Illuminating Company* v. *Wemple, Comptroller* (129 N. Y. 665), to which we are referred by the relator.

In that case the relator had made no report for the years for which the tax was imposed, and the Comptroller caused an investigation into its affairs, and on such investigation settled an account against it for taxes and penalties which the relator paid into the treasury without any warrant being issued for its collection, and thereupon applied to the Comptroller for a revision, which was refused, and the relator then sued out a certiorari.

The payment of the tax in that case was a necessary prerequisite to the granting of the certiorari, and the payment of the tax under such circumstances could not be regarded as a voluntary payment.

The tax was assessed without the relator's report or consent, and was paid, not as an evidence of any acquiescence in its imposition, but for the purpose of enabling the relator to review and reverse the action of the Comptroller on certiorari. What was said, therefore, by the Court of Appeals in 133 N. Y. 618, must be understood as relating to the facts of that case as it was then before the court, only on motion to amend the remittitur so as to give effect to the decision of the court as reported in 129 N. Y. 665.

We are, therefore, to consider the effect of the relator's voluntary report to the Comptroller and payment of this tax to the State treasury without objection, unaided by any decisions of this court or the Court of Appeals on that subject. The petition asks that the taxes assessed upon the relator's report and paid by the relator be set aside.

The granting of that relief, as this money was paid into the State treasury, would in effect make the State the debtor of the relator, and while the court would be without authority to direct its reimbursement, and the Comptroller would have no power to pay back the money (*People ex rel. Edison Electric Illuminating Co.* v. *Wemple*, 133 N. Y. 617, *supra*), it would become the duty of the Comptroller to credit the relator in account with the money so paid, as provided by added section 19 of chapter 542 of the Laws of 1880, as amended by chapter 463 of the Laws of 1889, and thus a duty would be imposed upon the Legislature to provide by law for payment to the relator out of the State treasury the amount of such tax.

This would be a circuitous method of allowing the relator to recover back from the State money voluntarily paid by it into the State treasury.

I do not think that chapter 463 of the Laws of 1889, amending chapter 542 of the Laws of 1880, capable of that construction. Section 2 of that amendatory act, in substance, if not in terms, seems to forbid that construction.

As we have seen, this payment by the relator was clearly a voluntary payment. The payment was made by the relator with a full knowledge of all the facts.

The relator assumed that it was its duty to make a report to the Comptroller, and voluntarily made such report, and as that report assumed the relator's liability to pay a tax as a corporation, the Comptroller imposed the tax in accordance with and in pursuance of the report, and the relator voluntarily paid the same. If the tax thus voluntarily paid by the relator was not authorized by law, then its payment by the relator was under a mistake of law and not of fact, and the law, under such circumstances, will not aid the relator in recovering it back, even though the assessment was upon property not subject to taxation, and, therefore, illegal.

The report to the Comptroller gave him jurisdiction both of the relator and subject-matter, and facts not disclosed by the report which might render the relator non-taxable, would not necessarily render the assessment void.

The rule of law in relation to voluntary payment of taxes is the same as that in other cases of voluntary payment, and when a tax is voluntarily paid by a party, without any duress or compulsion, the money cannot be recovered back, even though the person paying the same, with a full knowledge of the facts, believes that he is legally bound to pay the same. Such mistake of law furnishes him no ground for relief.

Upon this subject Judge COOLEY, in his work on Taxation, uses this explicit language : " Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back. Especially is this the case when the officer receiving the money, who is chargeable with no more knowledge

of the law than the party making payment, is not put on his guard by any warning or protest, and the money is paid over to the use of the public in apparent acquiescence in the justice of the exaction." And the learned author adds : " The rule of law is a rule of sound public policy also ; it is a rule of quiet as well as of good faith, and precludes the courts being occupied in undoing the arrangements of parties which they have voluntarily made and into which they have not been drawn by fraud or accident or by any excusable ignorance of their legal rights and liabilities." (Cooley on Taxation [2d ed.], 809, 810.)

In *Bailey* v. *Buell* (50 N. Y. 662), the plaintiff sued the assessor for damages for an illegal assessment, he being a non-resident. He paid the tax, however, on being served with an order of the county judge in proceedings under chapter 361 of the Laws of 1867, directing him to pay or execution would issue. Held, that the order of the county judge was void, and that the payment was, therefore, not compulsory, or made under legal duress, but was voluntary, and that the plaintiff could not recover.

In *Phelps* v. *The Mayor of N. Y.* (112 N. Y. 216), it was held that when an ordinance directing a local improvement in the city is on its face illegal and void the payment of an assessment without coercion for the expense incurred under its authority is a mistake of law, and, therefore, a voluntary payment, and the sum paid cannot be recovered back.

In this case GRAY, J., says : " She was under no compulsion to pay the assessment ; for there was concededly no duress of person or goods, and the payment was not forced by warrant or seizure. We do not understand that the rule goes further in its authority to permit of a recovery back of moneys paid by a person under a tax or assessment than in a case where its payment being compelled by an actual or threatened seizure of his person, or divestiture of his goods, he asserts by action, and successfully maintains its illegality."

In *Redmond* v. *Mayor, etc., of New York* (125 N. Y. 636), GRAY, J., in discussing this question, says : " The long-established and well-recognized rule on the subject of voluntary payments is that when made with knowledge of the facts, and not induced by the fraud of the other party, they are beyond recall in law." (*Brisbane* v. *Dacres*, 5 Taunt. 143 ; *Silliman* v. *Wing*, 7 Hill, 159 ;

*Preston* v. *Boston,* 12 Pick. 14; *Peyser* v. *Mayor,* 70 N. Y. 496; *Phelps* v. *Mayor,* 112 id. 216.)

Within all the authorities we think the payment of this tax was a voluntary payment by the relator, with full knowledge of the facts, without fraud on the part of the Comptroller or other officers of the State, and without coercion or duress, and as these proceedings by certiorari are in the nature of proceedings to recover back the money thus voluntarily paid they cannot thus be maintained.

The decision of the Comptroller refusing to resettle this tax is confirmed, and the certiorari quashed, with fifty dollars costs and printing disbursements.

PUTNAM and HERRICK, JJ., concurred.

Decision of Comptroller confirmed and certiorari quashed.