letters objected to were properly received, as forming a part of the same correspondence, in order that the jury might have the whole correspondence before them.    The court, in receiving the letters complained of, and by its charge upon the request of the plaintiff's counsel, sufficiently protected the plaintiff as to the effect the letters should have upon the jury.    The letters written by the testate were not evidence in defendant's behalf, standing alone, of the facts stated therein, but might properly be considered by the jury in connection with the balance of the correspondence and the conduct of the parties.    We are unable to see, under the circumstances, how these letters could have worked any injury to the plaintiff on the trial.

The appellant further complains of the instructions given by the court to the jury as to the burden of proof with reference to the defendant's counterclaim.    The court, in the course of the charge, said, in effect, that the burden of proof upon the whole case was upon the plaintiff, and she must establish her claim by a preponderance of evidence, but if the jury should find that the defendant's testate had acknowledged his liability at a certain time, for a definite amount, the plaintiff would be entitled to recover that amount, unless the defendant had overcome that state of facts by proof of an agreement (before referred to), or by proof of attorney's services, etc. (being the counterclaim in question), or by proof of other credits by way of payments.    At the close of the charge the plaintiff's counsel requested the court to charge that the burden of proof was upon the defendant to establish the counterclaim.    The court replied that it had substantially so charged.    Counsel said he did not think so, to which the court replied, "I decline to charge otherwise than I have already charged."    Plaintiff's counsel later excepted to the charge that the burden of proof was upon the plaintiff upon the whole case.    We are unable to see, looking at the whole charge, how there was any error committed by the court in respect to the burden of proof as to the counterclaim.    The jury was instructed that such burden was upon the defendant.

We find no error in the record calling for a reversal of the judgment.    The judgment should be affirmed, with costs.    All concur.

---

TOOLE et al. v. BOARD OF SUP'RS OF ONEIDA COUNTY.

(Supreme Court, Special Term, Oneida County.    November, 1895.)

1. PENSIONS—EXEMPTIONS—PROPERTY PURCHASED WITH PENSION MONEY.
    Under Code Civ. Proc. § 1393, providing that a pension granted for military services is "exempt from levy and sale by virtue of an execution, and from seizure for non-payment of taxes or in any other legal proceedings," land purchased as a place of residence for the purchaser and his family with pension money is exempt from sale for nonpayment of taxes.

2. SAME—PARTIAL OWNERSHIP.
    Where land bought with pension money is conveyed to a third person, who immediately reconveys it to the pensioner and his wife, an assessment of the entire parcel of land for taxation in the name of the pen-

sioner cannot be sustained, on the ground that his wife, as a tenant by entirety, had a taxable interest therein, as the assessment on her interest only should describe and identify it as her exclusive interest.

Action by Garrett Toole and others against the board of supervisors of Oneida county to cancel an assessment for taxes on property owned by plaintiff in the city of Utica, and to set aside a tax sale thereunder as a cloud on their title.    Judgment for plaintiffs.

The plaintiff Garrett Toole, while serving as a soldier of the United States in the war of the Rebellion, contracted a disease which so far disabled him that, in 1885, he was allowed a pension, to commence from the 20th of November, 1862. Upon the allowance of his pension, the first payment received amounted to $900, which he at once invested in the house and lot in question. The purchase price was $1,100, and the balance of $200, with interest, he paid out of other pension moneys, as they were received from the government, so that the entire purchase price was paid with pension moneys. On the 23d of May, 1893, he conveyed the premises to an intermediary, who forthwith conveyed the same back to Mr. Toole and his wife. In 1893 the entire premises were assessed in the name of Garrett Toole, upon a valuation of $400. and subsequently, by proceedings usual in such cases, the property was sold to the defendant for nonpayment of the tax so assessed. The premises consist of house and lot that are occupied by Mr. Toole and his wife and child. There are no buildings upon the property, except a small dwelling house and a henhouse, which were there when Mr. Toole purchased the property. It does not appear that any improvements have since been made, or that the property has increased in value since the date of the purchase.

George C. Carter, for plaintiffs.
George C. Moorhouse, for defendant.

VANN, J.    Both the national and state legislatures have been careful to protect soldiers in the enjoyment, not only of their pension money, but also of such property, bought with pension money, as can be clearly and definitely traced to that source.    The federal statute upon the subject is as follows:

"No sum of money due or to become due to any pensioner shall be liable to attachment, levy or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner." Rev. St. U. S. § 4747.

The statute of this state applicable to the subject is part of the Code of Civil Procedure, occurring under the title of "Property Exempt from Levy and Sale," and is as follows:

"The pay and bounty of a non-commissioned officer, musician, or private, in the military or naval service of the United States; a land warrant, pension, or other reward, heretofore or hereafter granted by the United States, or by a state, for military or naval services; a sword, horse, medal, emblem or device of any kind, presented as a testimonial for services rendered in the military or naval service of the United States; and the uniform, arms, and equipments which were used by a person in that service, are also exempt from levy and sale, by virtue of an execution, and from seizure for non-payment of taxes, or in other legal proceeding." Code Civ. Proc. § 1393.

This section received careful consideration in Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108, where it was held by the court of appeals, all the judges concurring, that when the receipts from a pension can be directly traced to the purchase of property necessary or convenient for the support and maintenance of the pen-

sioner and his family, such property is exempt from levy and sale on execution.    In discussing the case, Chief Judge Ruger used the following language:

"The plain purpose of the act was to promote the comfort of the soldier, to secure to him the bounty of the government, free from the claims of creditors, and to insure him and his family a safe, though a modest, maintenance so long as their needs require it. * * * We entertain no doubt that, where the receipts from a pension can be directly traced to the purchase of property necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt, under the provisions of this statute. Where such moneys can be clearly identified, and are used in the purchase of necessary articles, or are loaned or invested for the purpose of increase or safety, in such a form as to secure their available use for the benefit of the pensioner in time of need, we do not doubt but that they come within the meaning of the statute; but where they have been embarked in trade, commerce, or speculation, and become mingled with other funds, so as to be incapable of identification or separation, we do not doubt but that the pensioner loses the benefit of the statutory exemption."

As it appears that the pensioner in question has no property, aside from his interest in this real estate, and the monthly pension allowed him by the government, this case and the language used in deciding it seem applicable to the case in hand.    The statute of exemption makes no distinction between a levy and sale by virtue of an execution, which was that case, and the nonpayment of taxes, which is this case.    Considering the object of the statute, no reason is apparent for a distinction, as the soldier might lose his home, which it was the object of the statute to secure to him, by a sale for the nonpayment of taxes the same as by a sale for the nonpayment of debts.    The legislature, grateful to the soldiers who so faithfully served the country in its time of need, clearly intended to provide a comfortable support to such as had been wounded or had become disabled by disease in the discharge of their duties, by allowing them the use of all pension moneys, free from any claim for debt or taxes.    A statute with such an object should be so construed as to carry that object into effect; and, without further discussion, it is therefore held that the section under consideration, as construed by the court of appeals with reference to exemption from sale under execution, applies with equal force to exemption for nonpayment of taxes.

The defendant, however, claims that the wife has an interest in the property in question, as tenant by the entirety, by virtue of the deed running to the plaintiffs jointly, and the authorities sustain this position.    Bertles v. Nunan, 92 N. Y. 152; Zorntlein v. Bram, 100 N. Y. 12, 2 N. E. 388; Hiles v. Fisher, 144 N. Y. 306, 39 N. E. 337.    From this fact it is argued that the wife had an assessable interest in said land, which is probably correct.    It is further argued that, as real property may be assessed either to the owner or occupant, this property was properly assessed in the name of the husband, and that the assessment in question, if it is held that his interest was not assessable, should be regarded as applicable to her interest only.    An assessment upon her interest only, however, should in some way describe and identify it as her exclusive interest, as, otherwise, it would mislead purchasers, and place a

cloud upon the title of the husband. This was not done in the assessment in question, which is upon "all that piece or parcel of land," etc., and not upon any specific interest in it. The advertisement of sale was in the same form, and the sale was, apparently, of the entire land, and all estate, title, and interest therein. In form, at least, it included the interest of the husband only, for the name of the wife does not appear; nor is there any suggestion that any interest except that of the husband was assessed or offered for sale.

The defendant further claims that property bought with pension moneys does not continue to be exempt, even if occupied by the pensioner and his family, provided it so increases in value as to be far beyond the needs of his family for "a safe, but modest, maintenance." It may be that this position is correct, and that, in a case where the property had largely increased in value, only a certain amount of the valuation would be exempt, and the remainder taxable. But the argument based upon this proposition—that, as the assessors had jurisdiction, it is to be presumed that their valuation of $400 was only for the excess properly assessable, owing to increase in value—I do not regard as sound, under the circumstances of this case. Without reference to the question as to which party the burden of proof rested upon, I think the evidence fairly warrants the inference that there has been no substantial increase in value since the date of the purchase, which was May 13, 1885. The consideration then paid was $1,100, and no substantial improvements have been since made. It is still occupied as a dwelling house, and not for business purposes. The fact that there is a henhouse upon the premises, consisting of a house and lot in a city, is not without significance upon the point under consideration. No other point worthy of the expression of consideration has been made. No question was raised in the answer, or made upon the trial, as to misjoinder of parties plaintiff. Upon the whole case I think the plaintiffs entitled to judgment canceling the assessment and vacating the sale, with costs.

Findings and a decree may be prepared accordingly, and, if not assented to as to form, settled before me upon a notice of two days.