(18 App. Div. 415.)

ADAMS v. BOARD OF SUP'RS OF MONROE COUNTY.

(Supreme Court, Appellate Division, Fourth Department. June 22, 1897.)

1. TAXATION—ASSESSMENT.
    An assessment of real estate for taxation to the "Estate L." or "H'rs L." or "L. Est." is illegal.
2. SAME—VOLUNTARY PAYMENT.
    When sales of land have been made for taxes illegally assessed, and the owner, in order to complete a contract for the sale of the land to a purchaser who refuses to take title unless the taxes are paid or set aside, pays the taxes, such payment is not voluntary, and does not preclude an application for a refund of such taxes.

Appeal from Monroe county court.

Application of Delbert A. Adams, executor, to the board of supervisors of the county, for the return of certain taxes paid. From an order by the county court denying the prayer of the petitioner, he appeals. Reversed.

The petitioner resides at Brockport, and is the sole acting executor of the last will and testament of Lydia M. Wilcox, deceased, who died some seven years ago, and at the time of her death was the owner of a farm of about 131 acres of land situate in the town of Ogden, Monroe county. In the year 1891 the farm was assessed to "Est. Mrs. L. M. Wilcox." In the year 1892 the assessors placed upon their roll the words, "H'rs L. M. Wilcox." In the year 1894 it was assessed by the assessors to "Est. Mrs. L. M. Wilcox"; in the year 1895, to "Mrs. L. M. Wilcox, Est." The lands were sold for unpaid taxes levied as aforesaid, except for the year 1895. In January, 1896, the petitioner, who had a power of sale under the will of Mrs. Wilcox, being desirous of disposing of the farm to one Ernest Webster, and having occasion to obtain an abstract of title, "discovered that said taxes for said years were unpaid, and that the farm had been sold for taxes as above stated; and upon January 25, 1896, your petitioner gave notice to Messrs. Brewster, Gordon & Co., the purchasers at the tax sales of said farm, that on February 5, 1896, at 10 a. m., at the county treasurer's office, an application would be made to the county treasurer to have the sales of said farm canceled on the ground that the assessments of the said farm, as above stated, were absolutely void, and that the sales of said farm conveyed no right or title to the purchaser at said sales." The application was opposed, and the county treasurer refused to cancel the sales of the said farm. Thereafter Webster refused to accept a deed until the taxes for the four years mentioned were paid or set aside. Thereafter the petitioner paid the taxes, and took the county treasurer's receipt therefor. The petitioner alleges that the payment was not voluntary, and that he was compelled to pay the same in order to dispose of the farm under the power of sale contained in the will. The amount paid to the county treasurer, and for which sum he executed a receipt, was $287.07. The petitioner alleges that, in the fall of 1896, he presented a petition to the board of supervisors of Monroe county, stating the facts, and asked it to refund to him the amount collected from him, and that the board refused to refund. It appears in the petition that the farm, after the death of Mrs. Wilcox, was occupied by tenants, who resided in the house on the farm. The petitioner alleges that tax deeds were delivered upon said sales by the county treasurer to Brewster, Gordon & Co., prior to the payment made by the petitioner. The petitioner alleges that a demand was made on the 24th of December, 1896, for a return to him of the moneys so paid. The petitioner alleges that he did not pay to the county treasurer "until obliged to do so, or lose the purchaser to whom he sold the farm under the power of sale in the will, and not until he demanded of the county treasurer, on notice to Messrs. Brewster, Gordon & Co., that said sales of the farm to them be canceled, as provided by section 23, c. 107, Laws 1884." It is alleged that the farm was devised to certain children of Mrs. Wilcox, and that none of them resided on the farm at the time the several assessments were made. The farm was, by the petitioner, conveyed on the 1st

of April, 1896, to Webster. On the 24th of December, 1896, the supervisors refused to return the money. The will of Mrs. Wilcox authorized and directed the executors to sell all of her real estate, and convert the same into money, if they should so elect. No papers were read in opposition to the matters set forth in the petition.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Delbert A. Adams, in pro. per.
J. Desmond, for respondent.

HARDIN, P. J.    The assessments mentioned in the petition were illegal and unauthorized.    Trowbridge v. Horan, 78 N. Y. 439; In re Kenworthy's Estate (Sup.) 17 N. Y. Supp. 655; Cromwell v. McLean, 123 N. Y. 486, 25 N. E. 932.    In the last case cited similar assess-ments were declared to be "clearly illegal."    Chapter 686, Laws 1892, received construction in Re Buffalo Mut. Gaslight Co., 144 N. Y. 228, 39 N. E. 86, and the power of the county court to direct the refunding of an illegal tax was asserted.    In the opinion it was said:

"The power to refund taxes illegally or improperly assessed must necessarily carry with it power to inquire into the grounds upon which it is claimed they are illegal, and to determine for themselves whether they are illegal or not, at least in the first instance; so that it will be seen that thus far no power what-ever has been conferred upon the county judge."

In the case in hand it seems that an application was made to the board of supervisors for the refunding of the taxes, and was denied. In that opinion it was further said:

"But the legislature anticipated the possibility that the board might neglect or refuse to refund an illegal tax to the person who had paid it.    In such cases the board is required by the statute to cause it to be refunded upon the order of the county judge, and this is the only power which the statute has conferred upon that officer."

In that case the board had not been requested to refund, and the tax had not been paid, and it was concluded in that case that "not until an application for the purpose of having it refunded has been made to them can the county judge make any order on that subject." In the case in hand an application had been made to the board of supervisors before the petition was presented to the county court for an order requiring the repayment of the tax alleged to have been illegally assessed.

The respondent relies upon Tripler v. City of New York, 125 N. Y. 617, 26 N. E. 721, and asserts that that case authorized the county court to hold that the tax in question had been voluntarily paid. In the Tripler Case it appeared that the taxes were paid "with full knowl-edge" and before any attempt had been made to enforce payment, and that under such circumstances payment was not regarded as an in-voluntary one, made under coercion in law.    That case was subse-quently, on a second appeal, referred to in the opinion delivered in Tripler v. City of New York, 139 N. Y. 1, 34 N. E. 729, and, after stat-ing what was held in the case when first in the court of appeals, An-drews, C. J., said:

"But the court further held that the imposition of the assessment, and the pub-lished notice requiring payment, given by the city in 1881, did not constitute

coercion in fact, so as to make the payment of the assessment in 1887 involun-
tary; no steps having been taken by the city, subsequent to the publication of
the notice, in 1881, to collect or enforce the assessment. The court further held
that the mere fact that the assessment was an apparent lien on the plaintiff's
land, which might be followed by proceedings for its sale, where the city had
remained passive for six years, did not constitute coercion in law, so as to make
a payment made in 1887, for the purpose of clearing the title, involuntary, unless
the payment was made in ignorance of the facts which made the assessment
illegal."

In the case in hand sales had been made of the real estate, and pro-
ceedings so far ripened as to create an apparent cloud upon the lands
in question. Poth v. City of New York, 151 N. Y. 16, 45 N. E. 372.
In Peyser v. Mayor, etc., 70 N. Y. 497, it appeared by the complaint
that the defendants imposed and put upon record what appeared to
be, "and what defendants claimed was, an assessment on the plain-
tiff's land, and that the same became and was an apparent lien and
incumbrance thereon." In that case an action was brought to re-
cover back moneys alleged to have been paid by reason of the alleged
assessment, and a recovery was upheld, holding that the payment
was not voluntary. In Bruecher v. Village of Port Chester, 101 N. Y.
243, 4 N. E. 272, that case was referred to with approval. In that
case it appeared that the plaintiff, finding a warrant for the collec-
tion of an assessment upon his premises, and that the defendant
threatened to sell, and was about to sell, his premises for the payment
of the assessment, paid the taxes, and "having before that time sold
his premises, and being under contract to convey the same free from all
incumbrances, was unable to do so by reason of the assessment, which
was an apparent lien and cloud upon the premises; and thus he was
compelled, in order to complete the conveyance of his premises, to
pay, and did pay, to the treasurer." In that case it was held that the
payment by the plaintiff was not voluntary, and that the money was
taken from the plaintiff wrongfully, and the defendant had no right
to retain the same. In Vanderbeck v. City of Rochester, 122 N. Y.
285, 25 N. E. 408, when the payment was made no steps had been taken
looking to a sale of the land, and a notice had been issued that in-
terest would be charged after a given date if the assessment was not
paid, therefore the plaintiff voluntarily paid the same. The case is
quite distinguishable from the one in hand. The case in hand is
quite unlike Pooley v. City of Buffalo, 122 N. Y. 602, 26 N. E. 16.
When the claim was before the board of supervisors, they put their de-
nial upon the ground that "the proper course in this case is to apply to
the courts for relief." We think the county court erred in refusing to
grant the relief asked for, and that its order should be reversed, and
an order allowed directing the repayment to the petitioner of the sum
of $287.07, with interest thereon from the 24th day of December, 1896.

Order of the county court reversed, with costs, and the prayer of the
petition granted directing the board of supervisors of the county of
Monroe to repay to him $287.07, with interest thereon from the 24th
day of December, 1896, with costs of the appeal to the appellant. All
concur.