In the Matter of the Petition of GEORGE W. VAN HISE *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF RENSSELAER.

(County Court, Rensselaer County, November, 1897.)

1. **Real estate purchased with pension moneys — Exemption from taxation — Payment under mistake of law not recoverable.**

    Prior to the passage of the statute of 1897 (chap. 347, § 5), real estate, purchased with pension moneys, was absolutely exempt from taxation, but where the pensioner has, during a term of years, with full knowledge of the facts, voluntarily and in due course, paid taxes upon his exempt property, under assessments valid on their face, his payments must be deemed to have been made under a mistake of law; and, as such, cannot be recovered by him of the county.

2. **Same — County Court may order refund — Statute of Limitations — Interest.**

    The statutory exemption from taxation, granted to property purchased with pension moneys, should, however, be liberally construed; and as the provisions of section 16 of chapter 686 of the Laws of 1892, enacting that a board of supervisors may, among other things, " cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the County Court, it shall refund any such taxes," confer upon the County Court power to direct a refund in a proper case, the court will, in the interest of justice, direct a refund to the pensioner of the taxes paid by him during six years last past, but he should not be allowed interest upon his payments, as no penalty should be inflicted upon public officers who have merely held moneys which have been voluntarily paid to them.

APPLICATION for an order compelling the board of supervisors of Rensselaer county to refund certain moneys paid by petitioner for taxes alleged to have been illegally assessed and collected upon property owned by petitioner purchased with pension moneys.

E. I. Stiles, for petitioner.

H. O. Ingalls, for defendant.

NASON, J.   This is an application under section 16 of chapter 686 of the Laws of 1892, consolidating chapter 855 of the Laws of 1869 and the laws amendatory and supplementary thereto, for an order compelling the board of supervisors of Rensselaer county to refund certain moneys paid by petitioner for taxes, alleged to have been illegally assessed and collected upon property owned by the petitioner in the village of Greenbush, purchased with pension moneys, the board of supervisors having declined to refund the same.

It appears, as far as the intent and purposes of this controversy are concerned, that, in October, 1882, the petitioner purchased the house and lot where he and his family have resided for the last fifteen years for the sum of $600.

This $600 was a portion of certain pension moneys received by him from the government.   It is now well settled that property purchased with pension money, used as a home by the pensioner and his family, was exempt from taxation until the amendment to the law enacted by the legislature in 1897.   See Laws of 1897, chap. 347, § 5.

The pay, bounty and pension money received by a private from the United States government for military services in the United States army is exempt from levy and sale under an execution and seizure for nonpayment of taxes, and when the receipts from a pension can be directly traced to the purchase of property necessary or convenient for the support of the pensioner and his family, such property is exempt.   See Code Civ. Proc., § 1393; Yates Co. Nat. Bank v. Carpenter, 119 N. Y. 553; Toole v. Supervisors of Oneida Co., 16 Misc. Rep. 653.

Property, exempt from levy and sale under an execution, is also exempt from taxation.   Laws of 1896, chap. 908, art. 4, subd. 4.

By part I, chapter 18, title I, section 1 of the Revised Statutes it is provided that all lands   *   *   *   within this State, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter provided.

By section 3 of article I of chapter 908 of the Laws of 1896 it is provided that all real property within this state, and all personal property situated or owned within this state, is taxable unless exempted from taxation by law.

We are thus quickly brought face to face with the conclusion that the property involved in this case was exempt from taxation and from seizure for nonpayment of taxes, and that the assessors in assessing it acted without jurisdiction, and their assessment was therefore illegal and void. In the Matter of the Petition of the New York Catholic Protectory, 77 N. Y. 342.

The petitioner could justly have refused to pay these taxes, or else proceeded by certiorari to have the assessment stricken from the assessment-roll.

Up to this point all parties to this controversy are agreed.

The defendant, however, contends that although the assessment, valid on its face, was void in fact, yet, as the petitioner had full knowledge of the circumstances constituting the illegality, and as no fraud or coercion, actual or potential, in law or fact, was practiced on the petitioner, but, on the other hand, the assessors acted in the utmost innocence and good faith, and the payments as a matter of law were voluntary in their nature, the petitioner is foreclosed from obtaining the relief he seeks, for the reason that the mistake of the petitioner is a mistake of law, and when a mistake in law is the only ground on which such an action as this is based, the courts will not interfere.

It seems to me on general principles the defendant's reasoning on this point is clear and convincing, and the authorities cited fully sustain such a contention.

The petitioner in paying the tax had simply fallen into a mistake of law, and it is well settled that the courts will not disturb a settlement between the parties when an attempt is made to set it aside for that and no other reason. A wise and salutary rule charges all persons with knowledge of the law, and ignorance of its principles should not be allowed to provoke litigation.

The mistake here was not a mistake in fact, and "a voluntary payment made under a mistake in law, but with full knowledge of the facts and not induced by any fraud or improper conduct on the part of the payee, cannot be recalled." Vanderbeck v. City of Rochester, 122 N. Y. 289; Silliman v. Wing, 7 Hill, 159; Flynn v. Hurd, 118 N. Y. 19.

Where a party would recover back taxes which he did not pay under a mistake of fact and which he is under no obligation to pay, the payment must be compulsory. See Dill. Mun. Corp., § 946; New York & H. R. R. Co. v. Marsh, 12 N. Y. 308.

"Every man is supposed to know the law, and if he voluntarily

makes a payment which the law would not compel him to make, he cannot afterward assign his ignorance of the law as the reason why the state should furnish him with legal remedies to recover it back. Especially is this the case when the officer receiving the money, who is chargeable with no more knowledge of the law than the party making payment, is not put on his guard by any warning or protest, and the money is paid over to the use of the public in apparent acquiescence in the justice of the exaction." And the learned author adds: " The rule of law is a rule of sound public policy also; it is a rule of quiet as well as of good faith, and precludes the courts being occupied in undoing the arrangements of parties which have voluntarily made and into which they have not been drawn by fraud or accident or by any excusable ignorance of their legal rights and liabilities." Cooley on Taxation (2d ed.), §§ 809, 810; People ex rel. Edison Electric Ill. Co. v. Wemple, 69 Hun, 367, 371; Redmond v. Mayor, 125 N. Y. 636; Tripler v. Mayor, id. 617.

The Peyser case, 70 N. Y. 497, has no application to the case in hand because it simply lays down the principle that boards of assessors possess certain judicial powers, and that when their proceedings are valid on their face, their adjudications are quasi judgments. Presumptively no relief can be had as against them except by appeal, and when a person acting in good faith and in ignorance of the facts constituting the illegality of the assessments pays the same, he is deemed to make the payments under coercion in law and an action lies to recover the amounts exacted.

Judge Folger, in his opinion in this case, does not particularly discuss the effect of a knowledge of facts constituting the illegality as far as the person paying the tax is concerned, but he does state " that it may be well to say, that if the judgment is not afterwards reversed, but is invalid for any collateral reason, or the process issued upon it is illegal, payment with knowledge of the fact would perhaps be voluntary, which seems a sound distinction taken by Emott, J., in Lott v. Swezey, 29 Barb. 87-92."

There can be no question, I think, but that the petitioner must be charged with the knowledge that the assessments were illegal and that he paid them with knowledge of the facts constituting such illegality. In order to maintain this proceeding successfully it is, therefore, necessary under the decisions to show that such payments were involuntary.

In the case of Redmond v. Mayor, 125 N. Y. 632, a similar ac-

tion to have an assessment on property in New York city declared void and moneys paid thereon refunded, Gray, J., in writing the opinion for the unanimous court, at page 635, says: "The theory of such an action is that, *ex aequo et bono*, the defendant having no right to require the payment of the assessment, therefore, should not retain the moneys paid by the plaintiffs, and should restore them upon their demand.

"To maintain the action it is essential that it should appear that the payment had been made in ignorance of the invalidity of the assessment and through some legal coercion, or involuntarily upon some coercion in fact to prevent the seizure of goods or the arrest of the person."

What constitutes an involuntary payment is well defined by Judge Gray in Phelps v. Mayor, 112 N. Y. 222. "She was under no compulsion to pay the assessment; for there was concededly no duress of person or goods and the payment was not forced by warrant or seizure. We do not understand that the rule goes further in its authority to permit of a recovery back of moneys paid by a person under a tax or assessment, than in a case where, its payments being compelled by an actual or threatened seizure of his person, or divestiture of his goods, he asserts by action and successfully maintains its illegality."

Can it be maintained that any such harsh measures were resorted to or were threatened in this case?

True, the warrants attached to the assessment roll have been placed from year to year in the hands of the tax collector of Greenbush, but there is not an iota of evidence to show that any coercion, moral or physical, was exercised to overcome the will of the petitioner or wrongfully exact from him his money or his goods.

Indeed the taxes seem to have been paid voluntarily without any insistance whatever on the part of the authorities. It is quite certain if a benefit to this exemption had been claimed by the petitioner, to the assessors, the tax collector, or the county treasurer, no steps would have been taken to collect it.

It appears from the petitioner's own testimony that in the year 1896 he refused to pay the tax because he claimed the exemption; the tax does not seem to have been paid, nor does it appear that the authorities have sought to enforce the demand. The penalty of increased percentage for tardy payments seems to have had no terrors for him, because the statement of taxes paid introduced in evidence showed that for most of the years mentioned the taxes

could not have been paid until after the warrant, tax roll and return of unpaid taxes had been filed with the county treasurer, and the penalty had already attached.

Nor could the county treasurer have ever advertised the property for sale until a year after such filing.

Nor is there any evidence of a personal demand upon the petitioner or any seizure of his goods or threats of such seizure.   In view of all these circumstances, therefore, I am constrained to the conclusion that the payment of these taxes was voluntary, that the payment was made with full knowledge of the facts constituting the illegality of the assessment, and on general legal principles, and in pursuance of a long line of decisions, the petitioner would not be entitled to recover back these moneys.

The legislature, however, has deemed it wise to very much extend the legal principles which limit the right of recovery back in the case of voluntary payments and have offered a remedy where none existed before.   Section 16 of chapter 686 of the Laws of 1892, consolidating chapter 855 of the Laws of 1869 and the laws amendatory and supplementary thereto, provides as follows:

" Any such board may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board, or which may, or shall have properly come before such board for its action, confirmation or review; and cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the County Court, it shall refund any such tax."

This section, construed according to the plain meaning of its language, and the decisions explaining it, confers upon the county judge the very broad power of directing the refunding of all taxes illegally or improperly assessed or levied, and no qualifications or limitations are imposed.   See Matter of N. Y. Catholic Protectory, 77 N. Y. 342; Matter of Adams v. Board of Supervisors of Monroe Co., 18 App. Div. 415; Harris v. Supervisors of Niagara Co., 33 Hun, 281.

It is not now necessary to discuss the wisdom of the legislature in so greatly relaxing well-settled principles of law, and conferring on county judges power which even the Supreme Court does not possess.   There is no doubt but that the county judge does possess such power, and in pursuance to the evident intent of the legislature, it must be exercised in the proper case.   The exemption from taxation which pensioners have hitherto enjoyed partakes

73

more of an act of justice rather than of bounty on the part of the government which they sacrificed so much to preserve. Within the well-settled rules of law, these exemption statutes should be reasonably and liberally construed, and courts should see that pensioners are secured all the privileges as well as rights to which they are entitled.

The petitioner had an undeniable right to exemption from taxation as far as this property was concerned, and under the statute above cited, if not on general principles of law, he is entitled to an order directing the board of supervisors to refund, at least, part of the money paid by him upon these illegal assessments.

The petitioner claims in his petition that the sum of $58.11 should be refunded to him, which includes all payments of taxes made during the past ten years, with interest thereon. It is now conceded, however, that only payments made within six years from the time of instituting this proceeding are recoverable, and that any claim for moneys paid as taxes prior to that time are barred by the Statute of Limitations. This view of the case is upheld by the authorities. See Code Civ. Proc., § 382; Diefenthaler v. Mayor, 111 N. Y. 331; Jex v. Mayor, id. 339.

The total amount paid on such assessments within six years prior to the commencement of this proceeding, viz., from February 14, 1897, is, without interest added, $32.36.

The petitioner also makes a claim for interest.

The petitioner can only be allowed to recover what the statute allows him, and the statute makes no provision for any interest. I see no reasons, either on legal or equitable grounds, why interest should be allowed on the amount paid as incidental to the right to recover the principal sum.

The assessors and public officers acted in entire innocence and good faith in endeavoring to discharge the duties imposed on them by law, and as far as knowledge of the facts of the case are concerned, the petitioner was in much the better position. No wrong to which a penalty could attach should be imputed to public officers for simply holding moneys which were voluntarily paid to them.

I have found no authority particularly in point to guide me in reaching this conclusion except Matter of Adams v. Board of Supervisors of Monroe County, 18 App. Div. 415.

This was a proceeding instituted under section 16 of chapter 686 of the Laws of 1892, and interest on the illegal taxes paid was

allowed only from the time of demand for their return. There could be no impropriety predicated of the detention of the money in this case until the petition for their return was presented to the board of supervisors, December 1, 1896. Interest should be computed only from that time.

The petitioner is, therefore, entitled to an order directing the board of supervisors of the county of Rensselaer to pay him $39.36, with interest thereon from December 1, 1896.

Ordered accordingly.