JOHN F. DAVIS, Respondent, *v.* ANNA R. KLING, Appellant.

*Money paid by mistake — recovery of — accord and satisfaction — account stated and settled — voluntary payment.*

Under the terms of a continuing contract, extending for one year, the price which the person who furnished milk thereunder was to receive for the first six months could not be determined until the expiration of nine months from the time of such contract's going into operation. The person to whom the milk was furnished was, however, obliged to make monthly payments under the contract, and made them at the maximum price mentioned in the agreement until the end of nine months, when it was found that she had, for the first six months, paid a larger sum than the person who furnished the milk was entitled to.

*Held,* that the over-payments should be allowed in reduction of subsequent payments coming due under the contract, and that the monthly payments made amounted neither to a monthly accord and satisfaction nor to an account stated and settled, nor to a voluntary payment.

An account stated exists where the parties settle, and are deemed to intend to settle and state their accounts.

Voluntary payments are those made when one knowingly pays and intends to pay an illegal or unfounded claim, with full knowledge of its illegality or groundlessness.

Money paid under a mistake of fact may be recovered back, and such is the case, although the party making the payment, if vigilant and careful, could have avoided the mistake, and there may be a mistake as to a fact expected to happen as well as to one deemed already to have occurred.

APPEAL by the defendant, Anna R. Kling, from a judgment of the County Court of Sullivan county in favor of the plaintiff, entered in the office of the clerk of the county of Sullivan on the 12th day of July, 1893, upon the verdict of a jury directed by the court, and also from an order denying the defendant's motion for a new trial made on the minutes.

*J. I. Curtis* and *T. F. Bush*, for the appellant.

*John F. Anderson* and *Lewis E. Carr*, for the respondent.

PUTNAM, J.:

This action was brought to recover for milk sold and delivered during the months of February and March, 1892, under the provisions of a written contract between the parties, which took effect on April 1, 1891, and continued until April 1, 1892, and by which plaintiff during said period agreed to deliver milk to defendant. The latter was to pay on the fifteenth of each month for the milk delivered the prior month. In pursuance of the contract plaintiff delivered milk from April 1, 1891, to April 1, 1892, and following the delivery of each month defendant made the payments required by the contract by checks. The check of May, 1891, is as follows:

"JERSEY CITY, N. J., *May* 12, 1891.

"FIRST NATIONAL BANK:

"Pay to the order of A. Davis, twenty-five and 2-100 dollars.

"Paid in full to May 1st, '91.

"$25.02-100.                                   ANNA R. KLING."

Each month thereafter up to February, 1892, defendant paid for the milk delivered the previous month by a similar check. It is conceded that the milk delivered in February and March, 1892, has not been settled for. There is no dispute about the amount delivered, and its value at the contract price was forty-three dollars and ninety cents, the sum for which the county judge directed the jury to render a verdict in favor of plaintiff. The only question in the case arises

out of the claim of defendant, that in making the payments for the months of April, May, June, July, August and September she overpaid plaintiff the sum of twenty-seven dollars and forty-five cents, which should be allowed on the demand for milk delivered in February and March, 1892, leaving due plaintiff the sum of sixteen dollars and fifty-two cents instead of forty-three dollars and ninety cents. It was provided in the written contract that if plaintiff, and others who executed the same agreement with him, should deliver as much milk in November, December and January of the year embraced in said contract as they shall deliver in May, June and July of said year, the defendant would pay for the months of April, May, June, July, August and September one-half of one cent per quart less than the price made by the New York Milk Exchange. But if plaintiff shall fail to deliver as much milk in November, December and January as in May, June and July of said year then defendant would pay for the milk delivered in April, May, June, July, August and September three-quarters of one cent per quart less than the price made by the New York Milk Exchange. As above suggested, the contract provided that on the fifteenth of each month during its continuance the milk delivered the prior month should be paid for. Whether, however, the plaintiff should be entitled the first six months to be paid at the rate of one-half of one cent or three-quarters of one cent less per quart than the price made by the New York Milk Exchange, could not be determined until after the following months of November, December and January, as until then it could not be known whether plaintiff would or would not furnish in those months as much milk as he had in May, June and July. In making the payment for the first six months of the year, defendant apparently assumed that plaintiff in November, December and January thereafter would deliver the same quantity of milk which he did in May, June and July, and paid for the milk delivered one-half of one cent per quart less than the price made by the New York Milk Exchange. In fact, plaintiff in November, December and January did not furnish the same quantity of milk as in May, June and July, and, hence, plaintiff was only entitled to receive for milk delivered the first six months a sum three-quarters of one cent less per quart than the price made by the New York Milk Exchange. The defendant, therefore, overpaid for said first six

months of the contract, such over-payment amounting to twenty-seven dollars and forty-five cents.

There was no dispute as to the facts. the amount of milk delivered, the sums paid by defendant. and that she had for the months above specified made an over-payment which plaintiff was not entitled to under the contract.

The court below directed a verdict for the plaintiff for the amount claimed, holding that the conceded over-payments made during the first six months of the contract by defendant could not be allowed her. We cannot concur in the view of the case taken by the County Court. We can see no satisfactory reason why all sums paid by defendant for milk delivered by plaintiff should not be allowed.

As above suggested, the milk was delivered and payments made under a continuing contract extending from April 1, 1891, to April 1, 1892. The price which plaintiff should receive for the first six months could not, for reasons above stated, be determined until the expiration of nine months from the time of its going into operation. This being so, defendant being obligated to make monthly payments, made them at the maximum price mentioned in the agreement. When it was found at the end of nine months that she had for the first six months paid a larger sum than plaintiff was entitled to, we can see no reason whatever why the over-payment should not be allowed on subsequent payments becoming due. She made the over-payments, when it was uncertain what the amount of the monthly payments should be, at the maximum rate. When it turned out that she paid more than was due for the first six months, it is but just that the excess should be applied on the subsequent payments becoming due on the contract. No sufficient reason is stated by counsel for the respondent why the over-payments should not be so applied.

The monthly payments by defendant to plaintiff above referred to did not make a monthly accord and satisfaction as suggested by the learned counsel for respondent. There was never any dispute or controversy between the parties. There is nothing in the transactions in question like an accord and satisfaction.

Nor can the giving of the check each month be deemed an account stated as to the milk delivered the prior month. The

monthly payments in question did not effect an account stated because they were made at a time when it was impossible to determine the true amount that should be paid plaintiff. An account stated is where the parties settle and are deemed to intend to settle and state their accounts; the parties here under the plain provisions of the contract could not, when the monthly checks were given, settle the amount due the plaintiff. They could not make an account stated. Nor does the evidence in the case show any intent to make an account stated by any agreement or settlement between the parties. Nor can the over-payments made by defendant be deemed "voluntary payments." What are called voluntary payments are when one knowingly pays and intends to pay an illegal or unfounded claim with full knowledge of its illegality or groundlessness. As, for instance, had plaintiff at the termination of the contract demanded of defendant as the sum due him forty-three dollars and ninety cents, being the amount for which he obtained judgment, and had defendant paid him what he demanded voluntarily with the knowledge of all the facts which she now knows, this would have been deemed a voluntary payment and defendant could not have recovered the over-payment. (See *N. Y. Life Ins. & Trust Co.* v. *Manning*, 3 Sandf. Ch. 58; *Ritter* v. *Phillips & Ors.*, 53 N. Y. 586; *Bennett* v. *Bates & Ors.*, 94 id. 354; *Cox* v. *Mayor, etc., of N. Y.*, 103 id. 519; *Redmond* v. *Mayor, etc.*, 125 id. 632.)

Many other cases to the same effect might be cited. These authorities show that a "voluntary payment" is one made with full knowledge of the facts — a voluntary payment of an unfounded or illegal claim. It does not appear in this case that defendant intended to pay any sum in excess of the amount due on the contract. She made payments in advance of the time when she was bound to make them; larger monthly payments than, as it now appears, the contract called for. But when she made them the proper amount to pay was uncertain. The over-payments made by defendant in said months were not in pursuance of any demand of plaintiff. It does not appear that there was any settlement between the parties or that plaintiff asserted any claim for the sums paid. All that the case discloses is that at the end of each of the first six months the price per quart for the milk which plaintiff would, in the end, be entitled to, under the contract, being uncertain, the defend-

ant paid him the highest sum he could receive thereunder. She paid on the contract in advance, but it does not appear that she intended to pay, in the end, on the contract, a greater sum than plaintiff was legally entitled to. Therefore, there was no "voluntary payment" of the over-payment in question, no intent being shown (and none will be presumed on the part of defendant to pay plaintiff more than the contract price for the milk delivered).

We think that the over-payments made by defendant during the six months in question might be deemed paid under a mistake of fact. The payments were apparently made and received on the assumption that plaintiff would furnish the same quantity of milk in November, December and January as in May, June and July. There was a mistaken assumption. We suppose that there may be a mistake as to a fact expected to happen, as well as to one deemed already to have occurred. It is well settled that money paid under a mistake of fact may be recovered. (*Thompson* v. *Otis & Ors.*, 42 Barb. 461; *Tinslar* v. *May*, 8 Wend. 561; *Bank of Commerce* v. *The Union Bank*, 3 N. Y. 230; *Boyer* v. *Pack*, 2 Den. 107; *Renard* v. *Fiedler*, 3 Duer, 318.)

And this is the case, although the party making the payment, if vigilant and careful, could have avoided the mistake. (*The Kingston Bank* v. *Eltinge*, 40 N. Y. 391; *Waite* v. *Leggett*, 8 Cow. 195.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.