Argued January 5, affirmed February 16, 1926.

## ANDREW B. HAMMOND ET AL. *v.* OREGON AND CALIFORNIA RAILROAD COMPANY.

### (243 Pac. 767.)

**Public Lands—Purchasers of Land from Railroad not Charged With Constructive Notice of Conditions of Grants (Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870).**

1. Purchasers, from railroad company, of land granted by Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870, providing that such land should be sold only to actual settlers in quantities of not more than quarter-sections for not more than $2.50 an acre, *held* they were not derelict where patents contained no reference to provisos respecting alienation.

**Public Lands.**

2. Congress can relieve parties concerned from effect of covenants contained in railroad land grants.

**Vendor and Purchaser—Contract Held to Bind Vendor to "Convey" Title to Land Sold—"Transfer"—"Grant."**

3. Contract, binding railroad to "convey" land and execute a deed "transferring" land therein described, *held* to bind it, to convey title; "transfer" being conveyance of right, title, or property, either real or personal, from one person to another, etc., and "convey" meaning to transfer title from one person to another and having same legal effect as word "grant" (citing Words and Phrases, "Transfer").

Public Lands—Purchasers in Good Faith of Land, from Railroad, Sold in Violation of Grant, Held not in Pari Delicto With Railroad (Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870).

4. Plaintiffs, who in good faith purchased land from railroad company, sold by it in violation of terms of grant (Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870), providing that it should be sold only to actual settlers in quantities of not more than quartersections for not more than $2.50 an acre, *held* not *in pari delicto* with railroad.

Public Lands—Payment to United States to Perfect Title to Lands Purchased from Railroad Selling It in Violation of Terms of Grant not "Voluntary Payment" (Acts Cong. July 25, 1866, April 10, 1869, May 4, 1870, and Aug. 20, 1912).

5. Payment by plaintiffs to United States, under Act Cong. Aug. 20, 1912, to perfect title to lands purchased from railroad company selling it in violation of terms of grant (Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870), *held* not a "voluntary payment" which means one made without compulsion (citing Words and Phrases, "Voluntary Payment").

Public Lands—Purchaser not Required to Notify Railroad of Compromise, in Suit by United States to Forfeit Lands Purchased from Railroad (Act Cong. Aug. 20, 1912).

6. In suit by United States to forfeit lands purchased by plaintiff from railroad company, plaintiff *held* not required to notice railroad in to defend its rights before making compromise with United States (Act Cong. Aug. 20, 1912), where railroad was a party, and its counsel was present and made no objection.

Public Lands—Railroad, Conveying Land in Violation of Grant, Liable to Purchaser for Price Paid to United States to Perfect Title (Acts Cong. July 25, 1866, April 10, 1869, May 5, 1870, and Aug. 20, 1912).

7. Railroad company, selling granted lands in violation of Acts Cong. July 25, 1866, April 10, 1869, and May 5, 1870, *held* liable to purchaser for amount paid United States to perfect their title, under Act Cong. Aug. 20, 1912.

Vendor and Purchaser—Purchaser of Land may Recover Amounts Paid to Perfect Title After Purchase Price has Been Paid.

8. A purchaser of land may recover amounts which he has paid to remove an encumbrance or otherwise perfect his title, after purchase price has been paid, where outstanding claims actually paid by purchaser are superior to vendor's title, and purchaser was ignorant thereof at time of his purchase.

Public Lands—Payment to United States to Perfect Title to Land, Purchased from Railroad in Violation of Grant, held not "Penalty" (Acts Cong. July 25, 1866, April 10, 1869, May 4, 1870, and Aug. 20, 1912).

9. Payment, under Act Cong. Aug. 20, 1912, to United States to perfect title to land, purchased from railroad company in violation of terms of grant (Acts Cong. July 25, 1866, April 10, 1869,

and May 4, 1870), *held* not payment of a "penalty" so as to defeat recovery against railroad.

Public Lands—Purchaser not Precluded from Recovering from Railroad Amount Paid to United States to Perfect Title to Land, Purchased from Railroad by Subsequent Legislation (Acts Cong. July 25, 1866, April 10, 1869, May 4, 1870, Aug. 20, 1912, and June 9, 1916).

10.   Plaintiffs paying to United States, under Act Cong. Aug. 20, 1912, additional amount to perfect title to land, purchased in good faith from railroad in violation of grant (Acts Cong. July 25, 1866, April 10, 1869, and May 4, 1870), *held* not precluded from recovering amount so paid, by Act Cong. June 9, 1916, as to disposition of unsold lands.

Public Lands—Railroad not Excused from Liability to Reimburse Purchasers for Money Paid to United States to Perfect Title (Act Cong. Aug. 20, 1912).

11.   Where plaintiffs were required to pay additional amount, under Act Cong. Aug. 20, 1912, to United States to perfect title to land purchased in good faith from railroad, railroad *held* not excused from liability to reimburse plaintiffs because money if not so paid would eventually be devoted to promotion of education and for highways.

---

Constitutional Law, 12 **C. J.**, p. 957, n. 63.
Contracts, 13 **C. J.**, p. 498, n. 29.
Convey, 13 **C. J.**, p. 894, n. 44, 46, p. 895, n. 54.
Covenants, 15 **C. J.**, p. 1324, n. 46.
Grant, 28 **C. J.**, p. 821, n. 23.
Payment, 30 **Cyc.**, p. 1305, n. 45.
Public Lands, 32 **Cyc.**, p. 984, n. 65, p. 1081, n. 80.
Transfer, 38 **Cyc.**, p. 940, n. 72, 72 New.
Vendor and Purchaser, 39 **Cyc.**, p. 1944, n. 14.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

This is an appeal by defendant from a judgment in favor of plaintiffs and against defendant for the sum of $114,932.50. The cause was tried by the court without the intervention of a jury. Based upon a stipulation of facts and evidence offered, the court made findings of fact and conclusions of law and entered the judgment therein.

This cause was before this court upon a former appeal, involving a decision upon the demurrer to

the complaint. The demurrer was overruled. The case is reported in 98 Or. 1 (193 Pac. 457). The facts stated in the complaint are set forth in the opinion upon the former appeal. The cause was remanded to the Circuit Court and the defendant filed its answer to the complaint in which it admitted substantially all of the facts alleged therein and interposed several separate answers and defenses. To these separate answers and defenses the plaintiffs interposed a reply.

The facts necessary for an understanding of the case are substantially as follows:

On August 16, 1901, the plaintiffs and the defendant entered into a written contract under the terms of which the defendant agreed to sell and convey, and the plaintiffs agreed to purchase, 45,972.43 acres of land for which the plaintiffs agreed to pay the defendant the sum of $7.00 per acre, aggregating the sum of $321,807.01, in ten equal installments, with interest on deferred payments. This sum was duly paid by plaintiffs, but when the payments were completed the defendant was unable to convey a merchantable title to plaintiffs for the reason that the lands in question were lands granted by the United States by the acts of Congress of July 25, 1866, April 10th, 1869, and May 4th, 1870.

The first of these grants was made in aid of the so-called "West Side Line." The act of April 10, 1869, amended the act of July 25, 1866, in the following respect:

"That the lands granted by the act aforesaid shall be sold to actual settlers only, in quantities not greater than one-quarter section to one purchaser, and for a price not exceeding $2.50 per acre."

The other grant was made in aid of the construction of the so-called "East Side Line" by the act of May 4, 1870. It contained the following provision:

"That the said alternate sections of land granted by this act shall be sold by the company only to actual settlers, in quantities not exceeding 160 acres, or a quarter section to one settler, and at prices not exceeding $2.50 per acre."

The defendant became the beneficiary under said acts of Congress as to all of the lands covered by the contract between the defendant and the plaintiffs. Before August 16, 1901, patents were duly issued by the United States under the acts of Congress conveying to the defendant all of the lands covered by the contract. These patents contained specific references to the act of Congress under which they were issued and were recorded in the Record of Deeds in various counties in which the lands were situated prior to August 16, 1901.

The railroad company made sales of the land granted to it by the United States, under the act of Congress mentioned, in violation of the provisions of the acts, setting forth the maxima of quantity and price of which said lands were permitted to be sold Thereafter, and on April 30, 1908, Congress adopted a joint resolution authorizing the Attorney General to institute suits for the purpose of enforcing forfeiture in favor of the United States with respect to the lands included in the two grants. The United States instituted such suits, one of which, designated by No. 3340, was for the purpose of enforcing a forfeiture against the defendant as to the unsold lands remaining in the grants exceeding two million acres in quantity. Another suit was that brought by the United States against the defendant and these

plaintiffs in which the United States sought to enforce a forfeiture as to the particular lands covered by the contract now in question.

Pending the determination of either of these cases brought by the United States, Congress, by act approved August 20, 1912, authorized the Attorney General to enter into a compromise with any purchaser of the granted lands against whom suit had been brought upon the condition, that such compromise should require the entry of a decree of forfeiture against the purchaser, and, that within six months from the entry of such decree, the purchaser should be entitled to receive a patent from the United States, conveying the interest of the United States in the land on the payment by the purchaser to the United States of the sum of $2.50 an acre. As a result of the inability of the defendant to convey a merchantable title to the lands sold by it, the plaintiffs were compelled, in order to secure a valid title to the lands, to pay to the United States the sum of $2.50 per acre, under the provisions of the act of Congress of August 20, 1912, on account of which payment a patent was issued to the plaintiffs confirming the title to the lands.                        AFFIRMED.

For appellant there was a brief over the name of *Mr. Ben C. Dey,* with an oral argument by *Mr. Alfred A. Hampson.*

For respondents there was a brief over the name of *Mr. Charles H. Carey,* with an oral argument by *Mr. James B. Kerr.*

*Mr. S. W. Williams,* Special Assistant to United States Attorney General, *Amicus Curiae,* in behalf of United States.

BEAN, J.—In passing upon the demurrer involved
in the former appeal, this court, in view of the acts
of Congress, as interpreted by the federal courts
regarding the public policy indicated, stated:

"If it be conceded that the plaintiffs had con-
structive notice of the provisos as contained in the
granting acts referred to, then it would seem that
the federal court and Congress deemed the plain-
tiffs to be not *in pari delicto* with the defendant, and
therefore entitled to relief."

By its first defense interposed, the defendant pre-
sented the contention that at the time the contract
was entered into, the plaintiffs knew the only source
of defendant's title to be the patents to it from the
United States based upon the acts of Congress re-
ferred to. The contract, by its terms, provided that
the railroad company, upon the punctual payment of
the purchase money and

"faithful performance of all the covenants in this
agreement herein made on the part of the parties of
the second part, their heirs and assigns, and the
surrender of this agreement that thereafter it will
within thirty days from demand cause to be made
and executed to the parties of the second part, their
heirs and assigns, a deed assigning, transferring and
setting over to the parties of the second part, their
heirs or assigns, all the land hereinbefore described
and selected."

Defendant contends that it was the intention of
the parties that the defendant give and the plaintiffs
receive such title only as the defendant received from
the United States by virtue of the patents in ques-
tion and that any payment made by the purchaser
under the contract or in the acquirement from a third
person of a paramount title, or in the extinguish-
ment of an encumbrance upon the title contracted

for, is a payment made voluntarily by the purchaser and one which cannot be recovered by him from the vendor. In effect, the defendant contends that although it had solemnly contracted to convey a good title to the lands in question for $7 per acre, which it received in full, plaintiffs, when they found that defendant could not convey good title, were guilty of folly in spending the sum of $2.50 per acre to confirm the title.

This court in the former opinion held that the plaintiffs took the only course open to them saying:

"The matter was then wholly at sea, and any novice in legal matters would advise plaintiffs to take the course they did." 98 Or. 21 (193 Pac. 463).

And in regard to the contention that the payment was voluntary this court then said:

"In order to obtain the interest of the United States to the lands and perfect and confirm their title, plaintiffs were compelled to, and did, pay the United States the sum of $2.50 per acre, aggregating $114,932.50."

1. Defendant argues that the plaintiffs were charged with constructive notice of the provisions of the acts of Congress mentioned; that because the lands were patented and the patents showed that they were issued pursuant to these acts of Congress, although making no reference as to the provisions as to sale, the plaintiffs are charged with constructive notice of these provisions of the granting acts, therefore the contract was unlawful. Anent this question, upon the former appeal, at page 18 of 98 Or. (193 Pac. 457), this court stated as follows:

"The patents to the lands issued to the railroad by the United States contained no reference to the provisos respecting alienation contained in the granting acts. These patents named as the grantee, not the original grantee, the Oregon Central Railroad Company, but a stranger to the legislation of Congress, namely, the Oregon and California Railroad Company. The language of Mr. Justice Brewer in *United States* v. *California Land Co.,* 148 U. S. 31 (37 L. Ed. 354, 13 Sup. Ct. Rep. 458, see also Rose's U. S. Notes), in speaking of the diligence required of a purchaser of titles founded on a patent of the United States, is peculiarly apt. He says:

" 'If a patent from the government be presented, surely a purchaser from the patentee is not derelict, and does not fail in such diligence and care as are required to make him a *bona fide* purchaser, because he relies upon the determination made by the land officers of the government in executing the patent, and does not institute a personal inquiry into all the anterior transactions upon which the patent rested.' "

We see no reason for changing our former ruling. It should, perhaps, be noted that in the case of the *Oregon & California R. R. Co.* v. *United States,* 238 U. S. 393 (59 L. Ed. 1360, 35 Sup. Ct. Rep. 908, see, also, Rose's U. S. Notes), it was held that the provisos in the Land Grant Act of July 25, 1866, as amended June 25, 1868, and April 10, 1869, and in the act of May 4, 1870, to the effect that the lands granted must be sold by the railroad companies only to actual settlers in quantities not exceeding 160 acres to each, and at a price not exceeding $2.50 per acre, are not conditions subsequent, the violations of which result in forfeiture of the grants, but are covenants on

the part of the railroad companies which are enforceable.

2. Being covenants with the United States, it was within the power of Congress to relieve all parties concerned in whole, or in part, from the effect of these covenants. Congress by the passage of the act of August 30, 1912, in effect, confirmed the contract whereby the defendants sold the land to plaintiffs, requiring merely that the plaintiffs should pay $2.50 an acre as a condition of receiving a new patent, which should operate to release all claims of the United States. In the former opinion in 98 Or. 15 (193 Pac. 457) this court said:

"Did that court refuse to lend its assistance towards carrying out the terms of the contracts with Hammond and Winton and the Booth-Kelly Lumber Company? No. On the other hand, the government of the United States through the instrumentality of its courts and Congress, said to these vendees, in effect, keep the land which you have innocently purchased, but the United States still has an interest therein which will be obliterated, and your title will be confirmed upon the payment of $2.50 per acre to the United States, under certain conditions, which were complied with by plaintiffs. This was very far from refusing to lend its aid in carrying out the terms of the sale or treating the contract of sale as a nullity. By means of such contract the vendees have, with the solemn sanction of the Congress and the courts of the United States, obtained exactly what they contracted to purchase from the railroad company, at the further cost of $2.50 for what is analogous to an outstanding title."

It appears from the record that Messrs. Hammond and Winton had no actual knowledge of the provisos of the granting acts, as to the sale of the

lands, at the time they contracted with the railroad company for their purchase.

The second defense of defendant supplements the first by the plea that such a deed as was called for by the contract was executed by the defendant, and the delivery thereof tendered to the plaintiffs.

The third defense having heretofore been passed upon need not be stated.

By the fourth defense the defendant advances the contention that those purchasers of land of the defendant who availed themselves of the provisions of the act of August 20, 1912, and paid the United States, $2.50 per acre to secure a patent to the lands purchased, were penalized by said act to the extent of the payment so made and that they cannot now recover the amount of such payments. The fourth defense was supplemented by the fifth, with the plea that there must be read into the act of August 20, 1912, the subsequent proceedings in cause 3340, which is specifically referred to in said act, and in the legislation of Congress thereafter enacted in pursuance of the suggestion of the Supreme Court of the United States in its determination of said cause 3340. This legislation was the act of August 20, 1912.

In *Thompson* v. *Hawley,* 14 Or. 199, 200 (12 Pac. 276), at page 207, this court, speaking by Mr. Justice STRAHAN, used the following language:

"It seems to me that the more reasonable rule is, that where the terms of the contract are such as to bind the grantor to convey by a good and sufficient deed, or to make a good and sufficient conveyance, he can only perform his agreement by making a deed that will pass a good title. But if it clearly appears from the contract itself, or from the circumstances accompanying it, that the parties

had in view merely such conveyance as will pass the title which the vendor had, whether defective or not, that is all the vendee can claim or insist upon."

3. The contract in question by its terms bound the defendant to convey the land to plaintiffs. The transfer of such title as the defendant had, if it be defective, would not be a fulfillment of the contract. No other construction of the contract can be reasonably adopted. Nor are there any "circumstances accompanying it" from which "it clearly appears" that the parties had in view merely such a conveyance as will pass the title which the vendor had, whether it be defective or not. By the contract the defendant undertook that it would execute "a deed assigning, transferring and setting over to the parties of the second part, their heirs or assigns, all the land hereinbefore described * *."

One definition of the word "transfer" is: "The conveyance of right, title or property, either real or personal, from one person to another, whether by sale, by gift, or otherwise; any act by which the property of one person is vested in another." Webster's New International Dictionary, p. 2185. In a conveyance the word "convey" means to transfer the title or property. The word "convey" means to transfer the title from one person to another. It has the same legal effect as the word "grant" which has become a generic term applicable to the transfer of all classes of real property: Words & Phrases, Vol. 8, p. 7067; *Lambert* v. *Smith,* 9 Or. 185, 193.

4. The language of the contract clearly bound the defendant to convey the title to the land, as we held upon the former appeal when this court had the contract before it. It is not conceivable

that Messrs. Hammond and Winton when they contracted to pay to defendant the sum of $7 per acre for 45,972.43 acres of land, aggregating $321,807.01 with interest, had in view the reception of a conveyance of anything but a good marketable title. It was suggested by the United States Attorney General upon argument that the parties to the contract were *in pari delicto*. Upon the former appeal the court declared that the plaintiffs were in no sense *in pari delicto* with defendant. This court then said (98 Or. 9 [193 Pac. 459]):

"We concur in the conclusion of the government as evidenced by the decision of the Federal courts, in the action of Congress, and the department of Justice as represented by the Honorable United States Attorney-General to the effect that the plaintiff was an innocent purchaser of the land, and was not *in pari delicto* with the railroad company. Plaintiffs were not violators of the law. No law restrained them from making a contract of purchase of the lands. That inhibition, or covenant of the grant, was directed to and made to control the defendant, not the plaintiffs."

We quote in this connection from *Harris* v. *Runnels*, 12 How. 79, 86 (13 L. Ed. 901, see, also, Rose's U. S. Notes), as follows:

"Lord Mansfield said, with a very proper sensibility of the injustice of such a plea, and of the policy which permits it to be insisted upon: 'The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of a defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of,

contrary to the real justice, as between him and the plaintiff.' ''

The defendant says, in effect, that when it contracted to convey 45,000 acres of land to plaintiffs for a consideration in excess of $300,000, it ''had in view'' its want of power to convey any interest in these lands whatsoever, but nevertheless it had in view the accepting and retaining all of the payments made by plaintiffs. This contention does not square with conscionable legal principles. We cannot conceive that either party had in view any such purpose. In defendant's brief appears the following:

''Payments made under a · contract or beyond it in extinguishment of a paramount title are voluntarily made and may not be recovered from the vendor. They are in effect payments made under and because of a mistake of law.''

We quote from Words & Phrases, Vol. 8, page 7352, as follows:

''A voluntary payment means one made without compulsion. *Amsden* v. *Danielson,* 35 Atl. 70, 19 R. I. 533. ·

''Voluntary payments are when one knowingly pays, and intends to pay, an illegal or unfounded claim, with full knowledge of its illegality or groundlessness. See *New York Life Ins. & Trust Co.* v. *Manning* (N. Y.) 3 Sandf. Ch. 58; *Redmond* v. *City of New York*, 125 N. Y. 632 (26 N. E. 727). These authorities show that a voluntary payment is one made with a full knowledge of the facts; a voluntary payment of an unfounded or illegal claim. *Davis* v. *Kling,* 28 N. Y. Supp. 1026, 1029 (77 Hun, 598).

''To constitute a voluntary payment,'' says the court in the case of *Scholey* v. *Mumford,* 60 N. Y. 501, ''the party paying must have had the freedom

of exercising his will. When he acts under species of compulsion, the payment is not voluntary. *Edward C. Jones Co.* v. *Board of Education of City of Mt. Vernon,* 30 App. Div. 429 (51 N. Y. Supp. 950, 953)."

5. We fail to see that there was in effect any mistake of law under which plaintiffs made the payment to the United States. They were compelled to make payment in order to obtain the land which the defendant had contracted to convey to plaintiffs and which it had failed to do. We adhere to our former holding that the payment was not a voluntary payment: *Hammond* v. *Oregon & Cal. R. R. Co.,* 98 Or. 1, 8, 16 (193 Pac. 457); *Jenning* v. *Kiernan,* 35 Or. 349, 354 (55 Pac. 443, 56 Pac. 72); *Estep* v. *Bailey,* 94 Or. 59, 68 (185 Pac. 227).

It stands out boldly in this case that by the agreement the defendant undertook to sell and convey to plaintiffs, and the plaintiffs agreed to purchase, the land at the agreed price of $7 per acre. The contract was valid. In fulfillment of the contract when the plaintiffs made payment in full for the land they were entitled to receive title to the same. If in the consummation of the contract the plaintiffs are required to pay $114,932.50 for the land, it would not be according to the terms of the contract of the parties, but it would, in effect, be making a new and different contract for them.

6, 7. The railroad company was a party defendant in the suit of the United States *v.* plaintiffs and it is stated in the brief that counsel for defendant was present in court when the compromise between the United States and Hammond and Winton was effected. There was, therefore, no necessity for plaintiff to notice the defendant in to defend its

rights in the suit. The defendant made no objection to the compromise. The United States did not compromise in regard to this payment with the defendant. The contract between the plaintiffs and defendant has never been changed in any respect. It is incumbent upon the defendant to make its contracts of sale good by reimbursing the plaintiffs for the amount necessarily so paid to the Treasurer of the United States.

8. A purchaser of land, under a bond for title, or a contract guaranteeing him a good title, may recover or set off in an action for the purchase price amounts which he has paid to remove an encumbrance, or otherwise perfect his title, including interest and necessary expenses, where the outstanding claims actually paid by the purchaser are superior to the vendor's title, and of which the purchaser was ignorant at the time of his purchase. The same principle would apply to the recovery of money so paid after the purchase price has been paid: 39 Cyc. 1944; 15 C. J., p. 1324, § 228. The general rule is stated in 2 Devlin on Real Estate (3 ed.), Section 918, as follows:

"Where the encumbrance has been removed, or paid off by the covenantee, the rule is that he is entitled to damages for a breach of the covenant, the amount that he has paid for this end, if the amount was reasonable and fair."

*Grant* v. *Tallman,* 20 N. Y. 191 (75 Am. Dec. 384); *Stoddard* v. *Gage,* 41 Me. 287; *Brandt* v. *Foster,* 5 Iowa, 287; *Farnum* v. *Peterson,* 111 Mass. 148; *Brown* v. *Broadhead,* 3 Whart. (Pa.) 104; *Andrews* v. *Appel,* 22 Hun (N. Y.), 429; *Henderson* v. *Henderson,* 13 Mo. 151; *Kent* v. *Cantrall,* 44 Ind. 452; *Hartshorn* v. *Cleveland,* 52 N. J. L. 473 (19 Atl.

974); *Richmond* v. *Ames,* 164 Mass. 467 (41 N. E. 671).

9. We are unable to accede to the contention of defendant that the money paid by plaintiffs under the act of 1912 was a penalty and not recoverable. The act of August 20, 1912, authorized the United States Attorney General to enter into a stipulation with any purchaser of lands in good faith from the railroad company. The plaintiffs satisfied the Attorney General that they were innocent purchasers and had purchased the land in good faith. They were, therefore, entitled to the confirmation of their title and a patent to the land upon payment to the United States of the sum of $2.50 per acre. It is difficult to differentiate the situation thus presented from the purchase by a vendee of an outstanding title held by an individual which must be acquired to confirm a title purchased from a vendor. Negotiation, explanation, bargaining and agreeing as to a price between a vendee and an individual holder of an outstanding title in no way renders the money paid for such title a penalty.

10. Defendant urges that the act of June 9, 1916, precluded plaintiffs from recovering any sums paid by them under the act of 1912. The rights of plaintiffs to recover had accrued before the passage of the act of June 9, 1916. Such rights of action could not be affected by subsequent legislation by Congress: *Booth-Kelly Co.* v. *Oregon & Cal. R. R. Co.,* 98 Or. 21, 30, 31 (193 Pac. 463); 12 C. J, p. 957, § 487; Cooley, Const. Limit. (7 ed.), p. 517. We do not understand the Chamberlain-Ferris Act to contemplate any such purpose. The present case is governed by the usual rule pertaining to contracts of purchase of real property.

11. The plaintiffs and defendant entered into a solemn contract for the sale by defendant, and purchase by plaintiffs of certain lands at the agreed price of $7 per acre. It is conceded that each party was perfectly competent to contract. We see no room for the contention that by legislation subsequent to the execution of the contract the terms and conditions of the contract were changed and the rights of the parties affected thereby. It is not an excuse for a defendant for not fulfilling the terms of his contract and paying sums of money due on account of the agreement that the money if not so paid will eventually be devoted to a worthy purpose such as the promotion of education and for highways.

The allegations of the complaint, which this court formerly held were sufficient to constitute a cause of action, are sustained by the evidence. The Circuit Court so found and entered judgment accordingly. The judgment is affirmed.        AFFIRMED.

BROWN and COSHOW, JJ., did not sit in this case.

BURNETT, J., concurs in the result.

RAND, J., dissents.