# ETHEL L. DRYER, AS EXECUTRIX OF THE ESTATE OF HORACE A. DRYER, DECEASED *v.* STATE TAX COMMISSION

Howard N. Dietrich, Portland, tried the case and submitted a brief for plaintiff.

Donald H. Burnett, Assistant Attorney General, Salem, tried the case for defendant. On the brief were Donald H. Burnett, Assistant Attorney General, and Carlisle B. Roberts, Assistant Attorney General, both of Salem.

Decision for plaintiff rendered February 28, 1963.

PETER M. GUNNAR, Judge.

This is a suit to set aside State Tax Commission opinion and order No. I-62-8, by which plaintiff was denied her claims for refund of income taxes paid by her as executrix on behalf of the estate of Horace A. Dryer, deceased, for the fiscal years ending on August 31 of 1958, 1959, and 1960.

## FACTUAL SITUATION

On September 2, 1956, Horace A. Dryer died testate in Washington County, Oregon. At the time of his death he was a resident of Washington County, Oregon, and was seised and possessed of certain real and personal properties in Oregon and in Walla Walla County, Washington. Shortly after his death, his will was admitted to probate in domiciliary proceedings in Washington County and in ancillary proceedings in Walla Walla County, Washington, and, pursuant to his will, the plaintiff, his widow, was named the executrix of both estates.

While the plaintiff served in these fiduciary capacities at least nominally, she invariably followed the advice and directions of her son, Donald A. Dryer, who is experienced in business as a mortgage banker and the operator of cattle ranches. Mr. Dryer, in turn, relied for legal and accounting advice upon the plaintiff's counsel of record herein, both as an attorney and certified public accountant.

The domiciliary probate in Washington County, Oregon, was commenced on September 14, 1956, and in early October, an estate bank account was opened with The First National Bank of Oregon. Thereafter, until after August 31, 1960 (the end of the last fiscal year in dispute), all receipts of the Oregon estate were deposited in this bank account. When the ancillary probate proceeding was commenced in Walla Walla County, Washington, on November 5, 1956, no new bank account was opened for that estate, but rather, from that date until after August 31, 1960, all receipts of the Washington probate were deposited in the same bank account as the Oregon receipts. An additional bank account was opened with the Bank of California

some time after the years in question in this proceeding. Apparently, receipts of both the Oregon and Washington estates were deposited in this new bank account, the purpose of the second account not being to keep these receipts and estate funds separate, but rather to placate the Bank of California with whom Donald A. Dryer does business personally.

For the fiscal years 1958, 1959, and 1960, the plaintiff duly filed her Oregon fiduciary income tax returns reporting as Oregon taxable income all taxable income deposited in this single bank account, whether derived from Washington assets or Oregon assets.

Sometime following the filing of the 1960 return, someone awoke to the idea that the income of the Washington estate normally would not be taxable under the Oregon Income Tax Act. Thereupon, amended returns were filed for the years 1958, 1959, and 1960, by way of claims for refund. These claims for refund were administratively denied by the commission and, upon hearing, the above mentioned opinion and order No. I-62-8 affirmed such denial. Thereupon, this suit was brought to set aside that opinion and order and to direct the allowance of the refunds claimed.

Much of the evidence presented in this case, particularly the oral testimony, went to the issue of intent with respect to the maintenance of a single bank account. Since the plaintiff relied entirely upon the advice of her son, she had no specific intent, other than to do what her son advised was the correct thing to do. Therefore, if any intent existed, that intent was the intent of Donald A. Dryer, who actually managed the estate and in whose office the books of the estate were maintained.

From the testimony and documentary evidence, it

appears clear that there was no intent to maintain the two estates as separate entities. Mr. Dryer most assiduously maintained the separation of his mother's personal interest in the Walla Walla property from that of the estates, but the estates' funds were mingled, apparently without knowledge or advice that they should be maintained separately. The parties involved appeared to view the two estates as a single entity and to use the common fund created out of the receipts of both estates for the payment of the various claims in both estates. Not only was this commingling maintained up to the time that the possible tax defect of such commingling was discovered, but, peculiarly enough, it has been maintained to the present day, despite the fact that two bank accounts are now in existence. Donald A. Dryer testified that he had no recollection of anyone advising him to maintain a separate bank account for each of the estates and, apparently, neither his accounting nor his legal advisers have done so to this time.

It further appears that the Washington estate was the substantial source of income for the joint estates and that without this Washington estate income, the Oregon estate would have been in financial difficulties. Donald Dryer testified that the reason for maintaining only one bank account was that it was more convenient, implying that, with all of his other personal, business, and trust accounts, it was less confusing to have only one estate account. However, from an analysis of the funds available, it appears that part of the convenience, at least, arose out of the surplus income in Washington and the need for funds in the Oregon estate. By treating all the receipts in a single account, there was no necessity for inter-account transactions to meet the needs of the Oregon estate. On the other hand, had

separate accounts been maintained, disbursements would have been required from the Washington account to meet the needs of the Oregon estate, and these disbursements would have had to have been either partial distributions or loans.

Obviously, these transactions in the same bank account were not considered loans during 1958, 1959, or 1960, as loans would not have been reported for income taxes in the first place. However, in an attempt to take this position after the fact, the final account in the Washington estate, filed in September of 1962, denominates certain transactions totaling $43,166.55 as loans from the Washington estate to the Oregon estate.

## PARTIES' CONTENTIONS

The defendant bases its claim of taxability of the bank deposits to the Oregon estate upon its Reg. 6.810 (2), which reads in part:

> "* * * If the principal administration is carried on in this state, the estate is taxable with respect to that portion of its entire net income, *including the income received by an ancillary administration in another jurisdiction and paid over to the resident estate,* unless the income is specifically exempt by law. * * *" (Emphasis supplied.)

In its opinion and order, it found the deposits to have been made pursuant to an election which it claimed the executrix had to distribute the ancillary Washington estate to the domiciliary Oregon estate rather than to the devisees named in the will. It found that the deposits in the Oregon estate account constituted the making of that election. Since such deposits were made when the funds were received by the executrix, the commission found each such deposit to be a distribution of current income. It applied the conduit theory and found the income taxable to the Oregon estate.

The plaintiff contended that she had no such election, that, even if she did, the deposits were not *per se* exercise of it, that the conduit theory did not apply, and that the deposit in a single account constituted a mere commingling of funds, not a distribution of income.

Much of the evidence adduced went to the intent of the plaintiff in making such deposits and much of the argument went to whether she had the election claimed by the defendant. However, the case turns upon two, more fundamental questions. The first question assumes the validity of Reg. 6.810(2) and goes to whether any funds were paid over within its meaning. The second question involves the validity of Reg. 6.810(2) and goes to whether any such sums paid over are income to the Oregon estate.

## QUESTION OF TRANSFER

Generally, the word "transfer" means the "conveyance of a right, title or property, either real or personal, from one person to another * * *; any act by which the property of one person is vested in another." *Hammond v. Oregon etc R.R. Co.,* 117 Or 244, 255, 243 P 767 (1926). However, for tax purposes, "the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title. * * * 'taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed.'" *Sanford's Estate v. Commissioner of Int. Rev.,* 308 US 39, 43, 60 S Ct 51, 55, 84 L ed 20, 22 (1939). Rather than "transfer," the regulation uses the verb "pay over," which has a narrower meaning than "transfer," and implies an obligation as well as a change of control.

This verb "to pay" "generally signifies the discharge of a debt or the rendering to another of that which is due." *In re Edwards' Estate,* 140 Or 431, 447, 14 P2d 274 (1932). "Pay" and "pay over" usually are synonymous. See *Fidelity Union Trust Co. v. Egenolf Day Nursery Association of Elizabeth,* 64 NJ Super 445, 166 A2d 402 (1960). Thus, the regulation finds income received by a foreign ancillary estate which would be taxable under Oregon law taxable to the extent that it is passed to the control of the Oregon domiciliary estate in discharge of an obligation to do so.

Throughout this proceeding the defendant has contended that the deposit of the Washington income in the Oregon account constituted a transfer of the funds so deposited to the Oregon estate. In its brief, while recognizing the problem of control, the defendant urges the court to ignore the oral testimony and to rely on the documentary evidence as establishing the intent requisite for a transfer. This documentary evidence, it is contended, clearly indicates that the Washington income deposits were "receipts" of the Oregon estate.

■ This position ignores the elements of a transfer and a payment over. As noted above, the first element is control over the economic benefits. Throughout 1958, 1959, and 1960, Mrs. Dryer, as executrix of the Washington estate, was subject to the orders of the Washington court and was in control of the single bank account. To the extent of the funds in that account, the Washington court had the power to control their disposition by its order, limited only to the full amount of them properly accountable in that court. These Washington funds remained within the dominion and control of the Washington executrix and within the control of the Washington court. While the com-

mingling may have created some confusion, it did not transfer the funds out of the control of the Washington estate and probate court nor did it legally give the Oregon estate or court any "command" or "control" over the Washington funds.

Secondly, as to the element of obigation inherent in the words "paid over," the deposit of the funds in the Oregon account did not meet any duty or obligation. Counsel have cited verbatim various Washington probate statutes. Except as to the power and propriety of the ancillary executrix distributing to the domiciliary estate, they are in general agreement as to the Washington probate practice. Briefly, it is similar to that of Oregon and as material here is as follows: The probate, even though ancillary, is an independent proceeding and the general Washington probate procedure applies. RCW 11.20.090; 11.20.100; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash 762, 680, 117 P 492 (1911). As to the Washington real property, both title and income therefrom vest upon death in the heirs or devisees, subject to the rights of the personal representative to the possession thereof during administration for the benefit of creditors. RCW 11.48.020; 11.56.030; 11.04.250. *In re Henderson's Estate,* 46 Wash 2d 401, 403, 281 P2d 857, 859 (1955). Distributions from Washington estates may be partial or complete, but both require an order or decree of the probate court. RCW 11.72.040; 11.76.050. Broad discretion as to distribution is granted to the probate court. RCW 11.76.050.

■ The deposits in question were made from the very beginning of administration, without any order or court authority, and before any finding of facts required by the Washington statutes could be made

which would have supported any such order. RCW 11.76.050; 11.72.040. Thus, there could have been no duty to pay over, and, in fact, such payment, if any there was, was a breach of fiduciary duty—at least to the Washington court if not to the devisees under the testator's will.

■ At the trial, while many claims were made as to evidence of intent in such deposits, the facts taken from all sources indicate a lack of a specific intent, a carelessness as to legal consequences. Yet, even if a specific intent to benefit the Oregon estate by misapplying the Washington funds could be found, the executrix by her negligent or wrongful acts could not incur unwarranted tax liability upon the estate thereby. Clearly, had she maintained a separate account as she should have and had she made proper inter-estate loans, she could not have subjected either estate to Oregon tax. By depositing all receipts in one account she acted wrongfully and no provision of the will appears which required or permitted her so to act. In the taxation of fiduciaries the rule has been established that it is not the beliefs or improper acts of the fiduciary but rather the terms of the will or trust instrument and the rightful and lawful acts of the fiduciary under it which controls tax liability. *Commissioner v. Guitar Trust Estate,* 72 F2d 544, 547, 14 AFTR 477 (5th Cir 1934). This rule is consonant with the general law holding fiduciaries but not their trusts liable for their errors. In other words, the taxability arising out of an estate cannot be based upon the wrongful or erroneous acts of the fiduciary. *Freuler, Adm'r v. Helvering,* 291 US 35, 42, 54 S Ct 308, 78 L ed 634, 640 (1933).

■ From the foregoing it is this court's conclusion

that the mere deposit of the Washington funds in the single bank account did not constitute a transfer or payment over to the Oregon estate within the contemplation of Reg. 6.810(2). Thus, except as to the $43,166.55 actually transferred to the Oregon estate and expended by it, later called "loans," no funds were transferred or paid over to the Oregon estate and therefore the terms of Reg. 6.810(2) do not apply.

## WERE DEPOSITS INCOME?

Under the facts of this case, some of the Washington income, $43,166.55, was diverted to payment of the expenses and claims against the Oregon estate. The record is incomplete as to how much of this sum was so expended in the years in question. However, as to this sum, referred to as "loans" in the Washington final account, there can be little doubt that it was "transferred" to the Oregon estate because it passed from the control of the Washington estate. That it was "paid over" in the sense of transferred in discharge of any obligation is problematical. Certainly no order was entered and no duty to pay over existed. However, some of the expenditures were of the nature that they could have been claims in the Washington estate. By payment from these loans possible obligations of the Washington estate were discharged thereby satisfying obligations which could have been obligations of the Washington estate.

The second question then involves the validity of Reg. 6.810(2), which holds such transfers to be income of the Oregon estate. The answer to this question requires a determination of whether the funds paid over were "income" in the hands of the Oregon estate.

Income is defined in Oregon by ORS 316.105(1) as follows:

"(1) Gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; and from royalties paid by licensees of copyrights, patents and other similar property or privileges created by law, and by licensees, or by lessee of real property or interest therein, for the privilege of severing or removing minerals, oil or other natural deposits; and from interest, rent, dividends, including stock dividends, or any other income from money or credits, or from securities; also from the transaction of any business carried on for gain or profit, or gains or profits, and income derived from any source whatever, including income derived through resident and nonresident estates or trusts by the beneficiaries thereof. 'Gross income' also includes salaries and compensation of all employes of this state or any political subdivision, district or municipality thereof; and of all officials and judges, notwithstanding that such officials or judges hold constitutional offices and their compensation or salaries are not subject to being diminished during their terms of office."

Clearly, under this definition the sums paid on Oregon claims were income to the Washington estate but were not income *per se* to the Oregon estate.

■ As ORS 316.105(1) clearly reveals, income arises by virtue of the right in the taxpayer to receive the earnings of his capital or activity. The definition of income is more completely stated in Mr. Justice Pitney's opinion in the landmark case of *Eisner v. Ma-*

*comber,* 252 US 189, 207, 40 S Ct 189, 64 L ed 521, 528–529 (1919), where he said:

"After examining dictionaries in common use (Bouvier's Law Dict.; Standard Dict.; Webster's Int. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of August 5, 1909 [36 Stat. at L. 11, chap. 6], (Stratton's Independence v. Howbert, 231 U. S. 399, 415, 58 L. ed. 285, 292, 34 Sup. Ct. Rep. 136; Doyle v. Mitchell Bros. Co. 247 U. S. 179, 185, 62 L. ed. 1054, 1059, 38 Sup. Ct. Rep. 467): 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle case (pp. 183, 185).

"Brief as it is, it indicates the characteristic and distinguishing attribute of income, essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived,—'*derived—from—capital;*'—'*the gain—derived—from—capital,*' etc. Here we have the essential matter: *not* a gain *accruing* to capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in,* being '*derived,*' that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit, and disposal; *that* is income derived from property. Nothing else answers the description."

Clearly, income is not income beyond the owner of the capital or the performer of the service, unless its

income character is transferred by statute for tax purposes.

## CONDUIT THEORY

■ The "conduit" theory of trust and estate taxation is a creature of statute. But for that statute, all fiduciary income would be taxable to the fiduciary. Because of that statute, currently distributable income is taxable to the ultimate recipient, the fiduciary being treated as a mere conduit for that income. The conduit theory applies in both state and federal taxation.

■ Under ORS 316.805 to 316.840, and specificially under ORS 316.815(1) and (3), which are identical in theory and substantially identical in language to the Internal Revenue Code provisions concerning trusts and estates, all income of the types listed in ORS 316.805 is taxable to the trust or estate unless otherwise provided by 316.815. See 6 Mertens, Law of Federal Income Taxation §§ 36.18 et seq. Among the income types listed in ORS 316.805 as taxable to an estate is

> "(1) Income received by estates of deceased persons during the period of administration of settlement of the estate."

This provision would make the funds in question taxable to the Washington estate (if it were subject to Oregon tax). However, since the funds in the hands of the Oregon estate are not the product of capital or activity of the Oregon estate (but rather arise from assets not owned by it), they are not income and, therefore, are not taxable to the Oregon estate, unless made so by ORS 316.815 under the conduit theory.

In Oregon, but for ORS 316.815(3), ORS 316.815(1)

would tax all fiduciary income to the fiduciary. ORS 316.815, in its material parts, reads as follows:

"316.815 (1) The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in this section.

"(2) * * * * *

"(3) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of such income of the estate or trust for its tax year:

"* * * * *

"(c) Which, in case of income received by the estate of deceased persons during the period of administration or settlement of the estate, is distributed in partial settlement and such distribution is approved by order of the court having jurisdiction of the estate.

"(4) Any amount allowed as a deduction to the estate or trust by subsection (3) of this section shall be included in computing the net income of the beneficiary receiving the same, or to whom it is properly credited, to the extent taxable by this state to such beneficiary.

"* * * * *."

Thus, with respect to estates, ORS 316.815, the "conduit" statute, allows a deduction to the estate and taxes the recipient upon current income which is distributed in partial settlement of the estate pursuant to an order of the proper court. This statute then creates three conditions for tax liability: the nature of the transfer, as a distribution; the purpose of the transfer, as a partial settlement; and the authority for the transfer, an order of the proper court.

As used in probate proceedings and as applicable in this statute, the term "distribution" is a

word of art. It is the ultimate division of an estate among the next of kin in the case of intestacy or among the beneficiaries under a will, after the estate is free from debt. *State ex rel Dryden v. Thym*, 282 SW2d 178, 184, (Mo App 1955). *Thomson v. Tracy*, 60 NY 174, 180 (1875). *Commissioner of Internal Revenue v. Beebe*, 67 F2d 662, 664, 92 ALR 862. As indicated by the Oregon statutes, a distribution results in the full discharge of the fiduciary with relation to all property distributed. ORS 117.361(4). A distribution is not a mere transfer of funds, but rather, in probate, contemplates such a transfer from a fiduciary as lawfully vests title to the property in the objects of the decedent's testamentary or statutory beneficence.

■ It might be implied from its position that the defendant contends that any transfer of the income, even a transfer from one fiduciary to another, both holding for the same beneficiaries, is a "distribution" and creates tax liability. This contention is of first impression in Oregon.

Under the federal law, similar in its material aspects to the applicable Oregon statutes and, therefore, of substantial persuasion here, the taxability of a transfer from one fiduciary to the other has been denied. The leading case is *Urquhart v. Commissioner*, 125 F2d 701, 28 AFTR 1133 (9th Cir 1942). In this case certain individual trustees received dividend income which they paid over to a corporate trustee. The individual trustees claimed the federal deduction substantially identical to the one provided for by ORS 316.815. The Ninth Circuit Court of Appeals denied this deduction because the recipient was not a beneficiary but rather part of the same general fiduciary arrangement. This decision has been followed in other

cases, including *Cecelia K. Frank Trust of 1931,* 8 TC 368, 373 (1947). This view is persuasive both in its logic and by reason of the Oregon rule giving weight to federal decisions under similar statutes.

In addition to requiring a distribution, ORS 316.815 (3)(c) requires that the distribution be pursuant to an order of the probate court. Though required for a valid partial distribution under RCW 11.72.040, no such order has ever been obtained from the Washington court. The effect of this requirement of an order is to strengthen the Oregon statute beyond the present federal language. Prior to its amendment in 1942, the federal IRC 1939 was considered substantially identical to our present statute for purposes of the effect of federal cases. CCH Oregon § 16–924.85. Under the present IRC §§ 661–2, the distribution to be federally taxable must be lawfully distributable currently. By requiring an order of the probate court, the Oregon statute requires this proof of the legality of such distribution.

Even without this additional, express, statutory requirement, the federal courts consistently have held that, to be taxable, the distribution must be lawful. As noted above, it is not "the beliefs of the interested parties which control, but the terms of the trust instrument and the rightful acts of the fiduciary under it." *Commissioner v. Guitar Trust Estate, supra,* (72 F2d at 547, 14 AFTR at 480) ; *Freuler, Adm'r v. Helvering,* 291 US 35, 54 S Ct 308, 78 L ed 634 (1933). Under the doctrine of *Commissioner v. Stearns,* 65 F2d 371, 373, 12 AFTR 786, 788, (2nd Cir 1933), decedents' estates are generally treated as being nondistributable without a court order. This opinion of Judge Learned Hand has been followed by the Ninth Circuit in affirm-

ing the U. S. Tax Court in *Zellerbach v. Commissioner*, 169 F2d 275, 37 AFTR 1608 (9th Cir 1948). The affirmed Tax Court decision held that, though all the conditions existed for a partial distribution, the income was not taxable to the beneficiaries because no order of partial distribution was either sought or made. *Estate of Isadore Zellerbach*, 9 TC 89 (1947). In applying these cases here, it is to be noted that under the federal statute the income is taxable to the beneficiary not only if it properly is paid but also if it is properly credited.

Furthermore, in Oregon there is a history of administrative interpretation requiring a proper order and taxing to the estate, not the beneficiary, distributions made contrary to law or without legally required permission. OF 467, October 4, 1949; OF 222 April 16, 1948; OF 219 September 28, 1945, CCH Ore 16–924. This interpretation, based as it is upon the earlier federal statute which was substantially identical to ORS 316.815(3), is entitled to respect. *Pacific Supply Cooperative v. State Tax Commission*, 224 Or 556, 560, 356 P2d 939 (1960).

■ Yet another phrase in the Oregon statute buttresses this general interpretation—the requirement of distribution "in partial settlement." "Settlement" as used in probate means the distribution by a fiduciary so as to discharge the fiduciary from liability. It does not contemplate informal transfers of funds or unlawful disposition of assets.

Under Washington probate law, as under that of Oregon, the executrix was accountable for all funds of the estate which came into her possession. She had no right to transfer them to anyone, other than a lawful creditor, without the order of the Washington court. RCW 11.72.010–040. No such order was entered in

1958, 1959, or 1960, or as yet, according to this record, nor could she distribute to the Oregon estate lawfully, nor could such transfers be deemed to be in settlement, partial or complete. Therefore, none of the three conditions of ORS 316.815 have been met in this case and the funds deposited cannot be deemed income to the Oregon estate nor can they be taxed to it.

■ The defendant here contends that the conduit theory does not apply and that the statute ORS 316.815 does not apply because that statute is intended to refer only to local estates and their beneficiaries. Instead the defendant relies upon its Reg. 6.810(2), quoted above. Stated differently, the defendant's position is that the conduit theory applies to all fiduciary-beneficiary transfers, that the statute is merely a partial expression of it, and that Reg. 6.810(2) applies to this phase of estate taxation.

■ This position is logically untenable and Reg. 6.810(2), to the extent that it states or supports such position, goes far beyond the bounds of its supporting statute. ORS 316.810(2) upon which the regulation is based reads:

> "(2) The income of a resident trust or estate shall be taxed in the same manner and to the same extent as that of a resident individual. The income of a nonresident trust shall be taxed in the same manner and to the same extent as that of a nonresident individual."

It carefully excepts nonresident estates in its application. Resident estates, such as the one here in question, are to be taxed as a resident individual. If a resident individual received moneys from a nonresident individual which were income of that nonresident individual, the moneys to be held in trust and paid over to

another or others, his receipt of those moneys would not be income to him *per se*. These deposits were not "income" to the Oregon estate, as noted above in the discussion of the meaning of income. They also are not made income to the estate by ORS 316.805(1). This section does not apply to all moneys received by an estate during probate, but only to income. As noted earlier, income is defined by ORS 316.105 and includes only the profit from the application of capital and labor of the taxpayer, unless by statute such income is transferable to another for tax purposes. The receipt of these funds could only be income by reason of a statute setting forth the conduit theory, and under the facts of this case the requirements of our conduit statute, ORS 316.815, have not been met. To the extent that Reg. 6.810(2) purports to apply to this case, it goes beyond the regulatory powers of the commission and is not the law.

■ As noted earlier, much of the evidence in this case centered around the executrix's intent in making the transfers and much of the legal argument centered upon whether or not the executrix could elect to distribute to the Oregon estate. Yet neither the intent of the executrix nor her election could make the receipt of funds become "income" when in fact they were not income. Only by complying with the statute could the "income" effect of that Washington income be postponed to the Oregon estate. Thus, both her intent and any supposed election were immaterial because under the statutes and the cases her intent was immaterial, as the will and the law controlled. Had the deposits been distributions, made pursuant to court order, and as partial settlement of the Washington estate within the contemplation of Washington law, all required by ORS 316.815 to transfer tax liability to the distributee,

these arguments of intent and election might have been material. Without these clear statutory requirements, any question of the existence of any intent or such election is moot.

█ It currently is said that equity—the conscience of the sovereign—does not apply to taxation, despite the precedents of old (Carter, A History of the English Courts, 7th ed., London, 1953, p. 51; Potter's Historical Introduction to English Law, 4th ed., London, 1958, p. 118) and the elemental need and justification for it. Such doctrine no doubt grows not from the roots of the common law but from our reception of civil law concepts and the prevalence today of administrative, rather than judicial, tribunals in this complex field. In this cause, the result here determined is amply grounded in the law alone. But it also is supported and supportable in good conscience. Had the executrix and her advisers administered the Washington assets properly and kept the Washington funds in a separate account, Oregon clearly could not have claimed any tax liability on any income in question. Only because of the negligent violation of the probate law and the failure to follow even the most fundamental precautions of good accounting procedure on the part of the plaintiff and her advisers could there be even the color of a claim of Oregon tax liability to the injury of the devisees of the decedent.

A decision in favor of the plaintiff and setting aside the commission order will be entered under rule 31. This controversy arose through the careless administration of the estate. Therefore, the plaintiff executrix will not recover her costs herein.